## Vance *vs* House's Heirs.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Vendor and vendee.    Rescission.    Rents,    Interest.
Costs.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

CHANCERY.

*Case* 112.

*June* 28.

Statements of the bill of House.

IN 1830, Robert G. Vance sold and conveyed to Simeon House, a tract of 111 acres of land, in the county of Jefferson, lying on the Turnpike road leading to Frankfort, for $1,150, payable in instalments, with interest from the date. House executed to Vance a mortgage upon the land, to secure the payment of the consideration, and was put into possession. In 1834, Vance sued House on a note for $425, which had been renewed and was made to embrace two of the instalments which had before fallen due, and recovered judgment and sued out execution thereon, and had the same levied on the land sold to House, and purchased the greater part of it in satisfaction of his execution, at less than two thirds of its value. He also recovered judgment against House for another instalment of $200, Vance still holding a note for the last instalment of $150. In 1835, House filed his bill enjoining further proceedings against him, alledging that the title of Vance was defective, and that he had, at the time of the sale, represented to him that he had a good and perfect title, and executed and delivered the

VANCE
*vs*
HOUSE'S HEIRS.

deed with a promise to have the land surveyed, and to make to the complainant another deed, so soon as the same could be done; and the said Vance has failed to survey the land and make a deed as promised.

The answer and cross bill of Vance.

Vance answered, positively denying that he had made any false representations to said House respecting the title to the land, and insists that his title is good. He admits that it was agreed between them, that the land should be re-surveyed, and if it should hold out more than the 111 acres, that House was to pay for the surplus, at the rate of the original purchase, and says that it has been re-surveyed and ascertained to contain 116 acres, and he prays a decree for the surplus. He sets out his derivation of title, and making his answer a cross bill, prays that the land may be subjected to the payment of the residue of the consideration. He also brings the heirs of Lee White before the Court, and prays that if there be any defect in the deed executed by him as trustee, to Vance, in conjunction with George W. White and wife, that they may be required to perfect the same.

House's answer to cross bill of Vance.

House answers the bill, denying that he was to pay for the surplus, and uses the following language in relation to the representation of title by Vance: "He says that said Vance did represent that he was the owner of the land described in the deed filed with the respondent's original bill; that the deed is evidence of the fact, and if the said Vance has not the *legal title*, that *then* he did make false representations about the *title*," He tenders the money in Court, with ten per cent. thereon, which Vance bid for the land when sold under execution, before the time had expired for redemption, and which Vance was allowed to take out of Court, upon executing bond with security, to return the same if required by the decree of the Court.

Bill of revivor by House's heirs

House died, and the bill was revived in the name of his heirs, who pray that they have a deed for the title to the whole land, if Vance is able to make a good title, and if not, that they have a deed for the title to so much as he is able to make a good title to, and for general relief.

Decree of the
Chancellor in
the Court below.

The Chancellor, upon the hearing, annuled the contract of conveyance, upon the ground of a defect in the title, fixed the terms and principles upon which rents, improvements, waste, and consideration paid, should be settled, accounted for, and refunded by the parties respectively, and appointed Commissioners to make the assessment, settlement, and report. The report was made and exceptions to the same being taken by Vance, time was allowed to take affidavits for and against the same. In the progress of this inquiry, numerous and contradictory affidavits have been taken, and the record swelled to an enormous size, and the costs oppressively and unnecessarily increased. · The Chancellor, on the examination of the affidavits and proof, sustained the report of the Commissioners, and rendered a decree upon it according to the principles indicated in his decree dissolving the contract, and Vance has appealed to this Court.

We would here premise, that it is passing strange, that the rule should have been adopted for the ascertainment and liquidation of the rents, profits, and interest, which was adopted, when a rule so fair and easy was furnished by the express stipulations of the contract between the parties, in the covenant of warranty. For it is expressly provided that in case of eviction, Vance shall *refund the consideration without interest, as the use of the land is considered equal to the interest upon the consideration.* If upon the loss of the land Vance was not bound to refund interest upon the consideration, nor House to account for rents and profits, it would seem that upon a dissolution of the contract for a defect of title and apprehended loss of the land, that the same rule of mutual responsibility should have been adopted. And though all the consideration had not been paid by House, as Vance had not been permitted to enjoy the use of the money to that extent, while House had been permitted to enjoy the entire use of the land, equal justice might have been rendered between them, by estimating in favor of Vance, the interest upon the consideration which had not been paid him, and which he had not consequently been permitted to use and enjoy; and with this estimation and allowance in favor of Vance, to have settled the

When the parties
have agreed on
the principles
for adjusting
rents and inter-
est in case of
inability to con-
vey, or loss of
the land, that
principle should
form the crite-
rion by which to
adjust them.

account by off-setting the rents against the interest, and neither decreeing House to pay rents nor Vance to pay interest upon the consideration which had been paid him.

But passing from this preliminary suggestion, we would remark upon the merits of the controversy, that this is the case of an *executed* contract, when the conveyance has been made and *accepted*, with warranty of title, and possession delivered, and uninterruptedly enjoyed, without eviction or molestation. In such a case, a bill for the dissolution of the contract cannot be sustained, and the payment of the consideration injoined, except in the case of fraud, insolvency, or non-residency of the vendor, and a palpable and threatening danger of immediate or ultimate loss, without legal remedy, by reason of the defects in the title conveyed, and the inability of the vendee to protect himself against eviction under it. And to sustain such a bill after the vendee has accepted the conveyance, the *onus* lies on him to establish to the satisfaction of the Chancellor, that the defect of title and iminent danger of eviction and loss, exists.

*When a contract for the sale of land has been executed, a conveyance accepted, and purchaser let into possession, and no eviction or molestation, no injunction to the collection of the purchase money should be awarded, unless there has been fraud in the sale, insolvency or non residence of the vendor, and palpable danger of immediate or ultimate loss, without remedy. The onus lies on the vendee filing the bill in such cases.*

Testing this case by these principles, we must say that there is no allegation of fraud, insolvency, or non-residency charged, according to our understanding of the bill, nor is either attempted to be made out in proof, nor is such defect of title shown, as to justify a well grounded apprehension of immediate or ultimate eviction or loss of the land sold.

An attempt is made to sustain the bill on the ground of an allegation of fraud in the representation of good title, when the title was not good, and the failure of Vance to answer this charge. The representation of good title is not charged to have been *fraudulently* made; nor is it charged that Vance knew that his title was defective, and knowing it, had falsely represented it to be good, with a view to deceive or delude him into the purchase. Every allegation that is made may be strictly true, and yet Vance be exempt from the slightest imputation of fraud or of a fraudulent intent or purpose. He may have honestly believed that his title was good and the presumption is that he did believe it good, from the fact that he

had purchased, paid his money, and received a convey-
ance of the same title. And believing it to be good, he
sold and conveyed to House, representing it to be good
as he honestly believed it to be. If fraud could be im-
plied from such a representation, it might be implied from
every sale and conveyance that is made, when the title
should turn out to be imperfect. For good title may be
implied from every sale and conveyance by general war-
ranty, that is made. But if fraud is to be *implied* from
the representation charged, it is flatly denied by the an-
swer, and there is not a particle of proof to sustain it.
It is true that he does not specifically deny the represen-
tation of good title charged; and why? Because he then
believed and still believes it to be good. But he flatly
denies any *false* representation about it, which answers
the gist of any express or implied allegation of fraud.
Indeed it is apparent from the explanation of the charge,
to be found in his answer to Vance's cross bill, that he
intended only to charge that as a representation which *he*
*implied* from the fact of the conveyance. Nor can the
allegation of a breach of promise to have the land sur-
veyed and another conveyance made, amount to a charge
of fraud, if it were sustained by the proof. We cannot
conceive what advantage could accrue to House, or what
purpose could have been answered by having the land
surveyed and another deed made, unless the object was
the one suggested by Vance, that the true quantity might
be ascertained, with a view to a deduction from or addi-
tion to the price for the deficiency or surplus. The deed
that was made, is abundantly discriptive of the land sold,
as much so indeed, as if the same had been described by
metes and bounds; and House denies that the survey was
to be made to ascertain the surplus, or that he was bound
to pay for the surplus.

But the complainant has not only failed in his allega-
tions and proofs to make out fraud, but failed also to show
such defect of title as endangered his possession, or exposed
him to eviction. The possession is proven to have been ta-
ken under titles of Taylor and Cobb, and enjoyed uninter-
ruptedly under a claim of right by the different vendees, for
near forty years. Any apparent defect of title, or in the

Where the pur-
chaser had ac-
cepted a convey-
ance of a title
under which pos-
session had been
held for more
than 30 years,
though the deri-
vation of title
was imperfect—
Held that the

VANCE
*vs*
HOUSE'S HEIRS.

contract should
not be rescinded
for that cause.

derivation thereof, under those ancient conveyances which are more than 30 years of age, are surely cured by the lapse of time, and cannot afford even a plausible ground for apprehending danger to the complainant's possession or title. And although Henry Lyle, Sen. conveyed 200 acres of the Cobb patent, to his two sons, George Lyle and Henry Lyle, and they both have not joined in the conveyance of the 16 acres to Lurton, or of the 57 acres to George W. White, yet both of these parcels are charged to be parcels of the two hundred acres conveyed to them jointly, and the contrary thereof is not shown by House, upon whom as claimant under an executed contract, the burthen of proof lies; and it may also be inferred from the fact, that George Lyle conveyed the 16 acres to Lurton, as early as 1801, and Henry Lyle the 57 acres to George W. White, in 1826, either that they had made a division and each had conveyed, out of the parcels allotted to each severally, or that George had died without issue, and his interest had devolved upon his brother, before the last conveyance was made, which has been intimated in argument, and the contrary thereof has not been shown, or the title on that account proven to be defective by the complainant, upon whom the *onus* lies. Besides, neither have conveyed as much as the one moiety, to which each would be entitled upon a division, if a division has not heretofore been made, and in the allotment of a moiety to each, the interest of a vendee who has been let into possession would always be respected. So that there could not, from any thing that now appears, be any danger of the ouster of the complainants, from this apparent defect. And though the deed from Henry Lyle has not been proven by the two witnesses, so as to authorize it to be placed on the record, it has been proven by one and is sufficient without being recorded, to pass the legal title; and the possession will always protect the heirs of House against a subsequent sale to an innocent purchaser.

So also with respect to the deed made by Lee White, in conjunction with George W. White and wife to Vance; the conveyance passes the naked legal title of Lee White, and the omission to record it cannot redound to the injury of

House's title, or expose his possession to any real danger, for the reason above intimated; and so far from the complainant's having shown that any danger could accrue, or the title be successfully asserted in behalf of the other two *cestui que trust,* Elmira and Mary White or Vance, the contrary appears, from the fact, that other more valu· ble tracts than the one conveyed to Vance, for the bene- fit of George W. White, is embraced in the deed to Lee White, as trustee, and more than sufficient to make up to the use of each of them, an equivalent for the tract con· veyed to Vance. Besides, by the terms of the deed con- veying these several tracts to Lee White, he is to hold the same in the like manner, to the like uses, and with the like powers, as trustee, as he held under the deed of W. White, conveying to him the three-eighths of his estate for the use of the three children, George, Mary and Elmira. And by the original deed, he, the trustee, had the right, in conjunction with the other children of Wm. White, to whom he conveyed his estate, to sell, exchange or pur- chase other estate, and *divide* the proceeds among the three *cestui que trust.* The conveyance to Lee White, by the other heirs, is in the form of a sale and purchase by Lee White, and it was competent for him to divide the lands among them, or to set apart to either a portion not exceeding his or her aliquot parts. And we understand the deed made by him to Vance, in conjunction with George W. and his wife, as setting apart to George a portion of the trust fund in his hands, which he had a right to do; at least, the contrary thereof has not been shown by the complainant, or that their title is in any wise subject to be disturbed by these equities.

Upon the whole, without going more minutely into the examination of the title, we are satisfied, from the most careful examination, that the complainant has not shown any good ground for apprehending that there is immedi- ate or ultimate danger of disturbance to their title or pos- session. Their bill must therefore be dismissed.

But as much of the costs have been incurred and accu- mulated in the vain and unsuccessful attempt of Vance to reduce the amount of assessment for rents, and as we have already suggested that the rule adopted was errone-

The Court divide
the costs in this
and the inferior
Court.

ous, and the decree for dissolution also, and the error in the decree of dissolution might have been corrected by bringing the case to this Court, and the immense burthen of costs saved to the parties, and as we have the power under the statute, to divide the costs in cases of reversals, we think the costs in this case should be divided in this Court; and under all the circumstances, that the costs in the Court below should also be divided.

Mandate.

The decree of the Circuit Court is reversed, and cause remanded, that the complainant's bill may be dismissed upon the terms indicated, and that Vance, if he desire it, may have leave to proceed upon his cross bill, to enforce payment of the residue of the consideration out of the land, and the costs in this Court is to be divided equally between the parties litigant.

*Thruston and Baird* for appellant: *Guthrie* for appellees.

---

Case.

Case 113.

June 30.

Case stated.