JUDGE COFER
delivered the opinion oe the court.
As the court is yet satisfied with the opinion* already delivered in this ease as to all the points then passed upon, we need not again go over the ground covered by that opinion, and shall content ourselves with responding to such points as wére raised for the first time on the petition for rehearing, or on the re-argument.
If it be conceded that the certificate of the acknowledgment by Mrs. Herndon of the deed to G. J. and Harriet Rowland is defective as to so much of it as conveys part of the land to Mrs. Rowland, the deed executed by Mrs. Herndon, now Mrs. Smith, since these suits have been pending, fully confirms the former deed and cures that defect.
The appellants undertook to point out defects in the title. They averred that Lizzie Herndon was under twenty-one years of age when she executed the original deed, but did not suggest that she was a married woman when she made it, and this silence of the appellants, coupled with the fact that she executed a deed which was accepted by her father and his wife, who must have known whether she then had a living husband, and that, if she had, her separate deed was void, and the further fact that, it is proved .that her husband, Herndon, is dead, justify the conclusion that he died before the execution of the deed. But if he did not, the deed of confirmation answers that objection also.
Mrs. M. J. Smith’s dower has also been released, and a continuous adverse possession by actual occupation for sixty or seventy years has been proved, and it is scarcely possible to conceive of a better title than that exhibited in the record, which is not carried back by an unbroken chain to the commonwealth.
It is next insisted, however, that none of the deeds cover the land sold. Taking the calls just as. they appear in the *692 deed, they do not, except the calls for that portion conveyed by Mrs. Herndon to Mrs. Rowland. These seem to embrace four hundred acres of the land sold to Miss Buford.
In her amended answer, filed in 1873, she says the deed to George J. and Harriet Rowland “recites a boundary that would include or embrace the land this defendant supposed she was buying,” etc. But Ann O. Wallace, in her answer says, “This defendant denies that the deed from N. J. Smith to George J. Rowland, ... or that from Elizabeth A. Herndon to George J. and Harriet Rowland, ... or that the deed of N. J. Smith and wife ... to Mary Buford, or that the deed of N. J. Smith and wife to Elizabeth A. Smith, ... or that the deed of Robert Smith and Elizabeth A. Smith, his wife, to Harriet Rowland, . . . or that the deed of Harriet Rowland to Mary Buford . . . covers or embraces the land covered and embraced by the deed of Geo. J. Rowland and Harriet Rowland, his wife, to said Mary F. Buford, of date December 31, 1867, and being the land in controversy in these suits,” etc.
All these allegations may be true, and yet it may also be true that these deeds cover all the land except an immaterial part, and it may well be doubted whether the averments are sufficient to raise the question whether the deeds in fact cover that land sufficiently to make a valid title. But waiving this, we think there is enough in the record to show that the land is sufficiently covered by the deeds to vest the title in the grantees.
The tract of five hundred and eighty acres, of which the land in contest is a part, was conveyed to N. J. Smith, in 1859, by a commissioner, by metes and bounds, the same as in the subsequent conveyances. In the same year Smith conveyed it to Rowland, guardian for E. A. Rowland, by the same boundary, and further describing it as the old Smith farm. It has been subsequently conveyed by the same boundary, and has all the time been held, occupied, and used without interrup *693 tion or interference, and, so far as appears, without any doubt or uncertainty as to the actual location and boundary of the land. No complaint is made that any one else has or asserts title or claim to the land actually sold and purchased or that its boundary is unknown or in dispute.
The deed from Mrs. Herndon to Rowland and wife so describes the four hundred acres conveyed to Mrs. Rowland, as to identify it with the land sold to Mary F. Buford, and to show that it composes a part of the five-hundred-and-eighty-acre tract conveyed by the deeds of the commissioner to N. J. Smith, N. J. Smith to Rowland, guardian, and the several deeds of confirmation executed after this suit was brought.
The mistake in the course of the' first line is clearly shown, . and when that is corrected so as to run with the known line on the ground, and reference is had to the lines and corners of adjoining tracts, there is no reason for apprehending the slightest danger of even serious controversy growing out of mistakes in the calls of the deeds, and certainly no possibility of ultimate loss. The contract has been executed, and the burden was on the appellants to point out and establish defects in the title which would afford at least reasonable ground for apprehending that they might ultimately lose in consequence of such defects. (1 Dana, 312 and 328.) But they have failed to do so, and the chancellor has no power, to relieve them.
Learned counsel cite many cases to prove that, if Rowland represented his title to be good, and it was in fact bad, the consequences are the same, whether he knew it to be bad or not.
That such is the rule in a large class of cases is certainly true. But it has no application to a case like this. The contract has been executed, and the vendee seeks a rescission on the ground that the vendor represented the title to be good when in fact it was not good, but at the instance of the vendee the defects were cured, and at the hearing the title was per- *694 feet. The vendee then has all she bargained for and all she expected to get. Not so in the eases cited.
In the greater part, if not in all of the cases where the rule contended for by counsel was applied, the misrepresentation was as to the quality, quantity, location, situation, or condition of the thing sold, and in none of them was a rescission decreed for innocent misrepresentations of the state of the title if at the hearing the title was perfected so as to be as represented.
In McFerran v. Taylor, 3 Cranch, 281, the facts were that Taylor sold land to McFerran. Neither party knew where the land was situated, but Taylor believed and represented that it lay on Hingston’s fork of the Licking River. It turned out that it lay on Slate, another branch of the Licking, and was of less value than if it had been on Hingston. The court held the representation of the location to be material, and that the innocence of Taylor was no answer to McFerran’s claim to damages for a breach of the contract.
In Taymon v. Mitchell, 1 Maryland Chancery, 496, Mitchell sold slaves to Taymon, representing that they had been appraised at $1,200, and that they were of sound and healthy constitutions, when in fact they had been appraised at $750, and were radically and permanently diseased.
In all such cases if a party undertakes to make a direct representation of a fact, even though he be mistaken as to the fact, if the other party is induced to act upon such representations, equity will relieve against the act, equally, as if the representation had been willfully false, for the injury is the same. (3 Cranch, 281; 1 Maryland Ch’y, 499.)
But when the misrepresentation is as to the title merely, and the title is made good, then equity will not relieve, because there has been no injury resulting from the representation ; or if there has, then only to the extent of the injury. (Davidson v. Moss, 5 How. (Miss.) 683.)
*695 Where contracts have been fully executed there can be no rescission unless there has been actual fraud (Simpson v. Hawkins, 1 Dana, 305; see also same case, page 328; Vance v. House, 5 B. Mon. 537); and an innocent misrepresentation, as to the state of the title, is not such fraud as will warrant a rescission. (5 B. Mon. 540; see also Duvall v. Parker, 2 Duv. 182.)
The case of Ward v. Cotton, 3 Mon. 304, is, in many of its aspects, similar to this case. The contract was executed by a conveyance, and Ward the vendee, was put in possession in October, 1817. Cotton having obtained a judgment at law against him for a part of the purchase-money, Ward, in 1819, filed his bill to enjoin the judgment, and for a rescission of the contract for defects in the title which he pointed out, and which were of a character quite as serious as any complained of in this suit.
He also alleged that he purchased the property (a lot in Louisville) with a view of making valuable improvements on it, but, on account of an alleged error in the deed and the defects in the title, he was obliged in prudence to abandon his intention of improving it, and that it had greatly depreciated in value.
The lot had been conveyed by the trustees to Patton by an absolute deed, but he in fact held it in trust for McConnell. Patton then conveyed it to Cosby and Chambers, upon trust, to indemnify them as the sureties of McConnell, and after indemnifying them to reconvey to him, McConnell. Cosby, and Chambers conveyed to Cotton, thus leaving an outstanding equity in Patton. The deed from Patton had not been acknowledged or recorded, was attested by a single witness, and Patton was dead, leaving a widow, who had, so far as the record showed, a present right of dower, and the only original evidence that Patton held in trust for McConnell was a private unrecorded paper, which had been lost.
*696 Cotton finding his title thus defective filed his bill against the widow and heirs of Patton, and in 1821, nearly two years after he had been sued by Ward for a rescission, obtained a decree to perfect his title.
The deed from Cotton to Ward contained covenants of seizin in fee, good right to sell, general warranty, and further assurance. And pending his suit for a rescission Ward sued upon some of these covenants and recovered a judgment at law for the full amount of the consideration paid and to be paid for the lot. Yet notwithstanding all these impediments to a decree in favor of Cotton, this court compelled Ward to accept the title with further assurance, and perpetually enjoined him from proceeding to collect his judgment at law.
In summing up in that case the court said: “ But in this case the contract is not merely executory on the part of Cotton. He had conveyed to Ward, and put him in possession of the lot, and Ward had, in peace and quiet enjoyed the possession, without molestation or disturbance from any one; nor was there any delay on the part of Cotton in perfecting his title, for he seems, as soon as he learned of the objection to it, to have pursued with great diligence the only means in his power to remove those objections. If, therefore, in any case it is sufficient that the vendor is able to make a good title when the cause is heard, to compel the purchaser to accept it, undoubtedly it ought to be sufficient in such a case as this; and as Cotton, before the hearing of the cause in this case, had removed the objection to his title, and had it in his power to make such further assurance as Ward had a right to demand, and had offered to do so, the court ought to have decreed Ward to accept,” etc.
This language applies with great force to the case at bar. Nearly all that is there said of Cotton may be here said of Rowland, and what is said of Ward may be said of appellant with this addition, that while Ward insisted from the *697 beginning on a rescission, the vendee in this case, with a knowledge of some, if not of all, the defects now so strongly-urged as grounds for relief, asked that they should be cured, and did not, until that had been done, give any notice or manifest any disposition, to have a rescission if a good title could be had.
But it is claimed that in consequence of the defects in the title the vendee was unable to sell or mortgage the land to raise money to complete her payments, and that not having the money she has been unable to pay for it, and it has fallen in price, and has ultimately been entirely lost to her and her devisee, and that a rescission ought to be decreed on account of the peculiar hardship of the case.
As said in the former opinion, there is no evidence that the vendor was guilty of any actual wrong in representing the title to be good. The parties are equally innocent, and if we decree a rescission it will require the whole land, and according to appellant’s estimate of its present value it will be insufficient to repay the purchase-money, and in that case the land would be entirely lost to the vendors; so that if this court was at liberty to decide the casé in the way that would produce the least hardship, we should find the task far from an easy one.
But when there has been no bad faith, and no want of diligence on the part of the vendor, the rule is that if the title is good at the hearing the vendee must accept it, and by following this well-settled rule the court will avoid all complications arising out of an attempt to estimate the hardships on the one side or the other.
That the vendee was without the means of paying for the land without selling or mortgaging, and was unable to raise it in that way on account of defects in the title, certainly furnishes no ground for rescinding the contract. That question must be determined from the nature of the defects in the *698 title and the conduct of the vendor in the transaction, and not upon the financial condition of the vendee. If this were not so, then the right to a rescission would depend upon the question whether the vendee was rich or poor.
We are, for the reasons expressed in the former opinion and in this, constrained to affirm the judgment.
Chief Justice Pryor not sitting.

 Opinion next preceding this.