## Creekmore v. Bryant.

(Decided March 20, 1914).

(Appeal from McCreary Circuit Court).

1. Land—Bond for Title—Construction.—Under a bond for title, where the grantor agrees to make to the grantee a warranty deed for the surface of about 60 acres of land, "reserving the mineral and mineral rights of every sort and nature, and the right of ingress and egress and of way to work and exploit same at all future times, and any right of way to work same shall not cost said L. E. Bryant (grantor) more than the actual damage and $12.50 an acre, which right shall cease at the death of L. E. Bryant," the vendee acquires title to only the surface of the land in controversy, and the title to the mineral and mineral rights does not vest in him on the death of the grantor.

2. Land—Bond for Title—Deeds—Merger.—In the absence of fraud or mistake, a title bond to land is merged into a subsequent deed executed and delivered and accepted by the parties for the purpose of carrying the title bond into effect, and the deed expresses the final and entire contract between the parties.

3. Land—Title Bond—Deed—Failure of Title—Relief—Sufficiency of Petition.—Where the maker of a title bond subsequently executes a deed which is accepted by the vendee, the vendee is not entitled to have the deed rescinded or to have another deed made on the mere allegation that the grantor did not have title when the deed was made; since if he subsequently acquired title it would inure to the benefit of the grantee by virtue of the covenants of warranty.

4. Land—Title Bond—Deeds—Failure of Title—New Deed—Rescission.—Where the vendee in a title bond subsequently accepts a deed to the land and takes and enjoys possession without molestation or eviction, he is not entitled to a rescission without alleging fraud, insolvency or non-residency of the grantor, and the palpable or threatened danger of immediate or ultimate loss without legal remedy.

5. Land—Title Bond—Failure of Title—New Deed—Rescission.—Where a bond for title provides for a survey of the land and a sale thereof at $6.25 an acre, the mere allegation that the boundary in the deed is not identical with the boundary in the title bond is not sufficient to require the execution of a new deed or the rescission of the old one.

R. L. POPE and W. F. HINKLE for appellant.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY—COMMISSIONER—Affirming.

On April 7, 1911, L. E. Bryant executed and delivered to Renfro Creekmore a title bond to two tracts of land, one consisting of about 65 acres; the other containing three acres. The bond also included the coal of No. 4, or top seam of coal, opened on the land, containing about two acres. The material part of the title bond is as follows:

"Witnesseth: That for and in consideration of the sum of four hundred and twenty-five dollars, '425.00,' at the rate of $6.25 an acre, subject to survey, the said L. E. Bryant, agrees to make and binds himself to make to said Renfro Creekmore, or his assigns, a warranty deed to the surface of about 68 acres more or less of the land purchased by said Bryant from William Wilson, reserving the mineral and mineral rights of every sort and nature and the right of ingress and egress and of way to work and exploit same at all future times, and any right of way to work shall not cost said L. E. Bryant, more than the actual damages and $12.50, an acre, which right shall cease at the death of L. E. Bryant, all of which reservation shall be set out in the deed conveying this surface, and which deed said L. E. Bryant, binds himself unto the said Creekmore in double the purchase price to make and deliver to him the 19th day of April, 1911, bounded as follows, to-wit; (Description.)"

On April 15, 1911, L. E. Bryant and wife executed and delivered to Renfro Creekmore a deed, the material parts of which are as follows:

"Witnesseth; that for and in consideration of $425.00 dollars cash in hand paid the receipt whereof is hereby acknowledged the said first parties have bargained and sold by these presents conveyed unto the said second party the surface right to 68 acres more or less of land hereinafter described including the coal in a small knob above drainage and known as the No. 4, coal and into which a short entry has been driven and of which coal there appears to be about two acres, the rate at which the land surface is sold herein is $6.25 an acre. lying and being in the County of Whitley, and State of Kentucky, and on the waters of Paunch and Marsh creeks at the old Bryant Bros. mine and bounded as follows: (Here follows description.)

"There is reserved out of the above conveyance and not conveyed herein all the mineral and mineral rights of every sort and nature (except the No. 4 coal above granted as above quoted) together with the right to work

extract and exploit the same forever at all future times and right of ingress and of way to work, and develop same and any right of way granted L. E. Bryant, during his life to work this and adjoining coal shall not cost him over $12.50 an acre and the actual damages to any property which personal right to him shall cease at his death.''

The deed was recorded in the Whitley County Clerk's office on May 17, 1911.

On December 13, 1912, or about 19 months after the deed was recorded, plaintiff, Renfro Creekmore, brought this action against defendant, L. E. Bryant, alleging that by the title bond Bryant was to reserve the mineral and mineral rights for his life only, whereas he executed a deed to the surface right only of 60 acres of land, and retained the fee simple title to the mineral rights. He further stated that he was unable to examine the deed or compare it with the title bond until after the deed was recorded, and when the deed was examined by him, he, for the first time, discovered and found out that the deed was not in accordance with the title bond in the following particulars: (1) Because it excluded absolutely the mineral and mining rights of said land forever; (2) because Bryant, at the time the deed was executed, did not own the land, but it was owned by his brother; (3) the boundary set up and described in said deed is not identical with the boundary described in the title bond.

Plaintiff asked that the defendant be required to execute to him a deed of general warranty to said tract of land, in accordance with the terms and conditions of the title bond, or that he cause such deed to be made to him by those having the legal title thereto; or that the defendant be compelled to repay plaintiff the amount of the purchase price, with interest, and the value of certain improvements which plaintiff claimed to have erected on the land.

A demurrer was sustained to the petition and the petition dismissed. Plaintiff appeals.

It is the contention of the plaintiff that under a fair construction of the title bond defendant agreed to convey to him not only the surface of the land in controversy, but the mineral rights, subject to defendant's life estate therein, whereas the deed conveyed only the surface rights and reserved the mineral rights forever. While the title bond is not as explicit as it might be, we

are unable to agree with this contention. Defendant did not undertake to convey to plaintiff a fee simple title to the land in question. He agreed to convey only the surface. Not only that, but he reserved the mineral rights of every sort and nature, with the right to work and exploit same at all future times. The title bond further provides "and any right of way to work same shall not cost said L. E. Bryant more than the actual damage and $12.50 an acre, which right shall cease at the death of L. E. Bryant." As Bryant had agreed to convey only the surface, and had reserved the minerals for all future times, it is clear, we think that the right which was to cease at the death of L. E. Bryant was only the right to work the minerals at a cost of not more than the actual damage and $12.50 an acre. That this was the construction placed upon the title bond by the parties is strengthened by the delivery and acceptance of the deed made by the defendant for the purpose of carrying the title bond into effect. The deed, after conveying the surface and reserving the mineral and mineral rights, and providing that these were not conveyed, but were reserved, together with the right to work and exploit the same forever at all future times, provides "and any right of way granted L. E. Bryant, during his life to work this and adjoining coal shall not cost him over $12.50 an acre and the actual damages to any property, which personal right to him shall cease at his death." Thus the deed removed any doubt as to what the parties intended. Moreover, it is the generally accepted doctrine that all articles of agreement for the sale of land are merged in and extinguished by a subsequent deed thereof between the parties. Such a deed, when delivered and accepted, is deemed, in the absence of fraud or mistake, to express the final and entire contract between the parties, and any inconsistencies between the original contract of sale and the subsequent deed are in general to be explained by the latter. Jones v. Wood, 16 Pa. St., 25; Carter v. Beck, 40 Ala., 599; Davenport v. Whistler, 46 Iowa, 287; Frederick v. Youngblood, 96 Ala., 680; Davis v. Clark, 47 N. J. L., 338; Houghtaling v. Davis, 10 Johns, 297; Willaims v. Hathaway, 19 Pick. (Mass.), 387; Gibson v. Richart, 83 Ind., 313; 13 Cyc., 616. Here no mistake is alleged. True, plaintiff says that defendant "intentionally, fraudulently and wrongfully executed a deed for the surface right only," but this allegation is but a conclusion of

law. While he says that he was unable to examine the deed and compare it with the title bond until after the deed was recorded, he does not claim that he did not accept the deed and put it to record. He does not claim that he was unable to read, and that the contents of the deed were misrepresented. Nor does he allege facts showing that he was in any other way imposed upon or misled. He not only accepted the deed, but put it to record, and took possession of the property and held same for a period of 18 months. There being no allegation of mistake, and no sufficient allegation of fraud, we conclude that the title bond was merged in the deed. Fuson v. Chestnut, 109 S. W., 1192, 33 Ky. L. R., 249.

But it is insisted that plaintiff is entitled to relief because the petition alleges that defendant did not own the tract of land at the time the deed was executed. This may be true, and yet it is not alleged that defendant had not subsequently acquired title. If he had it would inure to the benefit of plaintiff, by virtue of the warranty of title. Besides, the contract has been executed, the deed with warranty of title has been made and accepted, and possession delivered. That possession has been enjoyed without eviction or molestation. The petition does not show fraud, insolvency or non-residency of the defendant, and the palpable or threatened danger of immediate or ultimate loss without legal remedy, by reason of defects in the title conveyed, and his inability to protect himself against eviction. That being true, he is not entitled to rescission. Simpson v. Hawkins, 31 Ky., 308; Vance v. House's Heirs, 44 Ky., 540; Buford's Adm'r. v. Guthrie, 77 Ky., 695.

The mere allegation that the boundary set up and described in the deed is not identical with the boundary described in the title bond affords no ground for requiring the execution of a new deed or rescission of the old deed. Under the title bond the land was to be surveyed and paid for at the rate of $6.25 an acre. Evidently the deed was made to correspond with the survey. It is not alleged that the deed does not cover all the land contracted for.

The trial court did not err in sustaining the demurrer to the petition.

Judgment affirmed.