### Bartley, etc. v. Big Branch Coal Company, etc.

(Decided October 7, 1914.)

### Appeal from Pike Circuit Court.

1. Contracts—When Specific Execution of Will Not be Refused.— Specific execution of a contract will not be refused because representations as to the profits to be made in the business were not realized, the undertaking being speculative and the parties necessarily understanding that these things would depend upon the events of the future.

2. Contracts—Meaning of for Sale of Shares of Stock of Corporations.—A contract for seventy shares of capital stock of a corporation of the par value of $100 each, means seventy shares worth $100 each at par value.

3. Contracts—When Specific Execution of Will Not be Refused.— Specific execution will not be refused where one of the parties has invested a large sum of money on the faith of the contract, the other standing by and acquiescing in it, and a great loss would be inflicted if specific execution were refused, though expected profits have not been realized.

4. Contracts—Failure of Wife to Sign Contract for Sale of Land—
Allotment of Dower—Specific Execution of Contract Will Not be
Refused.—Though the wife did not sign the contract, specific ex-
ecution will not be refused after the husband's death, where
there is other land out of which dower in the whole may be
allotted to her.

CHILDERS & CHILDERS and J. S. CLINE for appellants.

J. M. ROBERSON and R. H. COOPER for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

This action was brought to enforce the specific execu-
tion of the following contract:

"This agreement made this twelfth day of March,
1907, by and between Jos. W. Cockill, hereafter known
as the party of the first part, and B. M. Bartley herein-
after known as the party of the second part, both of
Lookout, County of Pike and State of Kentucky.

"Witnesseth, That the said party of the first part is
about to become the possessor of a certain lease of coal
land from the Big Sandy Company, known as the Big
Branch Sycamore Lease, lying between Big Branch and
Sycamore Creeks.

"And as the said party of the second part is the
owner of the surface and other rights of part of this
lease, it is agreed by the said party of the second part
to deed this surface and other rights to a corporation
which will be formed and of which the said party of the
first part will be one of the incorporators. The said party
of the first part being bound to assign to said corpora-
tion all the rights as given him under the proposed lease
to him from the said Big Sandy Company.

"Now, in consideration of this deed from the said
party of the second part to this corporation, it is under-
stood that the said party of the second part shall receive
seventy (70) shares of the capital stock of this corpora-
tion, said shares being of par value of ($100) one hun-
dred dollars each. It is further understood this said
corporation shall not be capitalized to exceed eighty
thousand ($80,000) dollars.

"Any buildings and improvements not essential for
the development of said leased property can be removed
from premises by the said party of the second part prior
to January 1, 1908, provided said improvements are not
in way of developments.

"The party of the second part grants the rights to the party of the first part to enter in upon the premises and begin developments and continue operation at once.

"The present road along Sycamore Creek is to be kept open and maintained for the benefit of both parties.

"Witness our hands and seals the date first written.

"J. W. COCKILL, (Seal),
"B. M. BARTLEY, (Seal).

"Witness, R. S. JOHNSON, J. A. BARTLEY."

"It is understood that said deed from said party of the second part to the said corporation is not to be made until (50%) fifty per cent of the stock has been paid and developments on the property be made in proportion to such payments.

"J. W. COCKILL, (Seal),
"B. M. BARTLEY, (Seal).

March 12, 1907.

"Witness, R. S. JOHNSON, W. D. BARTLEY."

After the making of the contract, Cockill became the owner of the coal lease of the Big Sandy Company. The corporation was formed and seventy shares of stock were issued to Bartley. The other stockholders put up $42,000, which was used in installing and equipping a coal plant on the property, which they operated from that time on. But Bartley failed to execute a deed to the corporation for the surface of the land. He died before the suit was brought, and the action was brought against his widow and children. A short time before his death, he conveyed the land described in the contract, also the shares of stock in the corporation in consideration of love and affection to his wife and two of his children. They resisted the specific performance of the contract on the ground that it was obtained by fraud, and was so inequitable and one-sided that it should not be enforced in equity. The chancellor adjudged the plaintiff the relief sought; the defendants appeal.

The chancellor properly held that there was no fraud in the obtaining of the contract. The matter was carefully discussed between the parties. Bartley understood just what he was doing, and the other parties to the contract faithfully carried out their part of it by putting up over $42,000 to install the plant. The proof is clear that they gave him the option either to take stock in the corporation or a less sum in cash, and that he preferred to

take the stock. It is true that after the contract was made some expressions were used to Bartley as to the dividends the company would probably declare, the profits from the business and the number of houses the company would build on the land. But anybody must have understood that the number of houses to be built would depend upon the business of the company and the profits upon its success; and any one knows that the success of coal operations often depends upon conditions found under the ground and that not unfrequently the best laid schemes of men are defeated by things turning out in the future differently from what they expect. Such statements as the proof shows were made to Bartley were clearly mere matters of opinion as to what the future would bring about after the plant was installed. The failure of such expectations to be realized in a speculative venture like this, is no reason for refusing specific execution where the other party has furnished the capital and done everything he was required to do by the contract. (Hood v. Todd, etc., 139 Ky., 426; Livermore v. Middlesborough, &c. Co., 106 Ky., 140.)

The defense that the contract was unconscionable is equally untenable. The contract does not call for seventy shares of the capital stock of the corporation having a market value of $100 a share. It calls for seventy shares of the capital stock of the par value of $100 each. This means seventy shares worth $100 each at par value; that is, if its selling value is at par with its face value. The evidence does not show that this stock was only worth ten cents a share; it shows that it was only worth this before the money was put into the corporation, but that after the money was put in, the stock was worth something over $50 a share. The coal under the land had been conveyed by Bartley under another lease; he only owned the surface. It was a rough, mountainous tract of land and the surface was worth comparatively little except for a coal operation. There was no such inequality in the contract as to warrant the chancellor in refusing to enforce it. Bartley was the vice president of the corporation; his son also was one of the officers; he lived two years after the contract was made and at no time tendered back his stock or demanded a rescission. He allowed his associates to put $42,000 into the venture, and they would suffer a great loss if a specific execution was not now enforced.

It is true the widow did not sign the contract, but it only embraces a part of Bartley's farm, and there being other real estate sufficient to give her dower in the whole, she must be assigned dower out of the land remaining unsold, and her failure to sign the contract is immaterial. (Richmond v. Harris, 102 Ky., 389, and cases cited.)

Judgment affirmed.