## Electric Hammer Corporation v. Deddens.

(Decided December 19, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas, Fourth Division).

1. Fraud—Essentials of Actionable Fraud Stated.—Misrepresentation, to be actionable or to furnish ground for equitable relief must be of material fact, made with knowledge of its falsity, or under circumstances not justifying belief in its truth, and be relied on by person intended to have been influenced thereby.

2. Corporations—Representation that Corporation Owned Patent for "Perfected" Device Held Not False, Though Device Subsequently Improved.—Representation that corporation owned patent for "perfected" electric hammer was not false, where hammer, though subsequently improved, was patented and was capable of use for purposes intended, since "perfected" does not import absolute perfection, but only that device is useful and serviceable for purpose

intended, "perfect" being relative term, meaning to finish or complete so as to leave nothing wanting.

3. Fraud—Misrepresentation Must be of Fact, and Not Opinion.— Misrepresentation, to be actionable, must concern existing or past fact, and not future promise, prophecy, or opinion of future event, unless declarant falsely represents his opinion of future happening.

4. Corporations—If Stock Salesman, Representing Corporation would be Marketing Patented Device Within Few Months, Knew Corporation had no Intention to do So, Purchaser Entitled to Relief. —If stock salesman represented that corporation would be marketing patented device within few months, knowing that corporation had no purpose to do so, and not expecting corporation to perform his promise, purchaser of stock was entitled to relief, otherwise not.

BRUCE, BULLITT & GORDON and LEO T. WOLFORD for appellant.

H. M. PECKINPAUGH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

Appellee, Ida Deddens, before her marriage was Ida Shuckmann. While she was a single woman and on March 31, 1920, she executed to the Reciprocating Electric Tool Company, incorporated, predecessor of appellant Electric Hammer Corporation, a note for $100.00, due four (4) months after date with six per cent (6%) interest, in part payment on the purchase of 200 shares of capital stock of the Reciprocating Electric Tool Company. In consideration of the purchase of other shares of stock in the same corporation she executed on April 10, 1920, to the same corporation a note for $225.00 due four months after date, with six per cent interest. When the company reorganized as the Electric Hammer Corporation the notes became the property of the new corporation. When she refused payment, this suit was instituted by the corporation against her on the two notes.

The answer traversed the averments of the petition and averred:

"That at the time this defendant subscribed for and purchased said stock and paid to plaintiff said $75.00 cash, and executed and delivered her said note for $225.00, as hereinbefore set out, the said Jeff D. Kean, its agent and officer, stated and represented

to this defendant that plaintiff had a fully developed and perfected tool, known as an electric hammer; that plaintiff had a United States patent on said tool; and that said tool was ready to be manufactured and put upon the market by said plaintiff within a few months from the date of said purchase of stock by this defendant; that said statements and representations made by the said Jeff D. Kean, as agent and officer of plaintiff, were false, fraudulent and untrue, and were known by said Kean to be false, fraudulent and untrue, and for the purpose of deceiving and defrauding this defendant; that this defendant believed and relied upon the statements of the said Kean, and that but for her belief of and reliance on said statements and representations she would not have purchased said stock, would not have paid plaintiff said $75.00, and would not have executed said note.

"That plaintiff's said tool, known as an electric hammer, has not yet been manufactured and put upon the market; that defendant did not know that the statements and representations of the said Jeff D. Kean, agent and officer of plaintiff, as above set out, were false and untrue until after she had executed and delivered to plaintiff the note herein sued on, on April 10, 1920.

"That upon ascertaining the fact that said statements and representations were false, fraudulent and untrue, this defendant demanded of plaintiff the cancellation and return of said note, and offered to cancel and return to plaintiff her certificate of stock; but plaintiff refused and still refuses to cancel and return said note, and refused and still refuses to accept the cancellation and return of said certificate of stock.''

The defense with respect to the other note was the same as the foregoing.

The reply was a traverse of the averments of the second paragraph of the answer.

A trial resulted in a verdict for the defendant Deddens and the company prosecutes this appeal.

In order to constitute actionable fraud or fraud against which equity will relieve, it must appear that the misrepresentation was a matter of material fact, as dis-

tinguished from opinion, at the time of the making of the promise and must be relied upon by the person whose action it was intended to influence, and must be made with knowledge of its falsity or under circumstances which did not justify a belief in its truth.    Livermore v. Middlesboro Town Land Company, 106 Ky. 140; Bartley v. Big Branch Coal Company, 160 Ky. 123; Baker v. McDonald, 185 Ky. 470.

The record shows that the tool mentioned in the pleadings was patented by the United States government and was perfected to the extent that it was capable of use for the purposes for which it was intended, although it was later improved and made better.    It was never marketed because, as appellant corporation contends, the appellee and other purchasers of stock refused to pay their notes and subscriptions and thus prevented the consummation of the object of the corporation which appellant now insists should have been accomplished. There was, therefore, no misrepresentation by the agent of the corporation in the sale of the stock to appellee in so far as he represented that the appliance had been patented and that it was a perfected tool or device, if indeed he made such representations.    It is argued, however, that the tool was not perfected or else no improvement could have been made upon it.    We do not think the word "perfected" when used in connection with a patent imports perfection, or a state upon which no improvement could be made, but only such condition as makes it useful and serviceable for the purpose for which it was intended.    "Perfect," says 30 Cyc. 1391, "is a term not more extensive than the word 'completing.'"

Webster's New International Dictionary defines perfect as, "to make perfect; to finish or complete so as to leave nothing wanting; to carry through to a conclusion; to accomplish; to complete by equipment of all that is requisite to its nature and kind."    It gives as synonyms: "Finished, accomplish, complete and consummate."    As an illustration of the meaning of the word "perfect," as applied to a machine the same work says: "A press that prints the paper on both sides in one passage, and sometimes one that also folds and pastes it."

30 Cyc., page 838, says, "That in order to constitute an anticipation the invention must have been in a form adapted and intended for immediate practical use.    An inoperative device will not anticipate."

In the case of American Hide & Leather Splitting & Dressing Machine Co. v. American Tool & Machine Co. (U. S.), 1 Fed. Cas. 647, 652, it was said:

" 'A perfect machine' in the sense of the word 'perfect' as applied to inventions, means a perfected invention; not a perfectly constructed machine, but a machine so constructed as to embody all the essential elements of the invention, in a form that would make them practical and operative so as to accomplish the result. It is not necessary that it should accomplish that result in the most perfect manner, and be in a good condition where it was not susceptible of a higher degree of perfection in its mere mechanical construction."

It will thus be seen that the word "perfect" does not convey the thought of absolute perfection but only such completion or consummation as implies that the device is finished or accomplished. Indeed, the word "perfect" is a relative term, especially when applied to machines, for inventive genius seems to have no bounds but finds ways to improve devices which before were thought to be perfect.

The next question is as to whether the representations of the agent in the sale of the stock that the company expected within a few months to put the device upon the market, was such a representation as would justify a court of equity in annulling the contract of sale if it turned out to be untrue and the company failed to begin to market the product within the few months. The representation must be one concerning an existing or past fact, and not one relating to the future in the nature of a promise or prophesy. If the representations were merely a statement of opinion that the company would be marketing the product within a few months then there was no fraud and there could be no relief from the contracts which the notes represent. There is one exception to this rule. It arises when the declarant falsely represents or states his opinion or belief at the time knowing that it is untrue, and that no such thing is in fact contemplated or will come to pass. This rule is laid down in 26 C. J. 1093, in these words:

"Since the state of a man's mind is as much a fact as the state of his digestion, the weight of

authority holds that if the falsity of the statement can be established, the misrepresentation of opinion, belief, or intent is an actionable representation of fact.  This redress may be had for the dishonest expression of an opinion contrary to that really entertained by the speaker, especially if he is an apparently disinterested third person, or if a deliberately false opinion is expressed in terms importing personal knowledge of its truth, or for a promise made with the present intent of future breach.  Under this doctrine the speaker has been held liable for misrepresenting his opinion as to the amount of future stock dividends, the purpose for which he will use leased premises, and his intention to buy an option, indorse a third person's note, bid in goods at auction or contract a marriage.''

It is only when the statements become, in legal effect, representations of fact, or the expression of opinion is insincere and made with ulterior purpose to deceive or mislead the injured person, that they may be treated as fraudulent.   Owens v. Norwood-White Coal Co. (Iowa), 174 N. W. 851.

Expressions of opinion will support an action for deceit when knowingly false and made with intent to deceive, and are so acted upon that they do deceive.   Moon v. Benton, 13 Ala. A. 473, 68 S. 589.

To base a charge of fraud on the expression of an opinion the opinion and belief must be fraudulently misrepresented and it is not enough that the truth differs from the opinion.   Seymour v. Chicago, etc. R. Co., 181 Iowa 218.   See Daniel v. Daniel, 190 Ky. 210.

The court erred in its instructions to the jury. The jury was told in substance to find for the plaintiff corporation upon the two notes, unless it should believe from the evidence that at the time of the execution of the notes the plaintiff's agent, Kean, represented to the defendant that the said tool, referred to in the evidence, was perfected and a patent had been secured from the United States government, and that the said tool was ready to be manufactured and be put upon the market and would be put upon the market in a few months and that said statements so made by Kean, the agent, to the defendant were false and untrue at the time and were known by him to be false and untrue at said time and

were made by Kean for the purpose of inducing the defendant to purchase said stock, and the defendant, relying on the statements, purchased said stock and executed the notes sued on, in which event the jury should find for the defendant. In as much as the evidence shows that the machine was patented and was a workable device although not absolutely perfect—as no machine is—these two elements should have been omitted from the instructions.

The third ground should have been submitted in a different form embracing the principles which we have attempted to state above, that is, that redress may be had for dishonest expressions of opinion contrary to those really entertained by the speaker, only when a deliberately false opinion is expressed, or when a promise is made with a present intent of future breach; or with no intention of carrying out the promise or declaration of future expectation. If the plaintiff company, through its agent, Kean, represented to appellee Deddens at the time and before she purchased the stock, with the purpose to induce her to purchase it, that the company would be marketing the machine within a few months, when the company had no purpose to do so, and the agent knew this fact and did not expect the company to perform his promise to market the machine within a few months, then in that event the appellee Deddens was entitled to relief, otherwise not.

Upon another trial, if the evidence is in substance the same as upon the last trial, the court will reform its instructions to meet the foregoing suggestions.

Judgment reversed for proceedings consistent herewith.

Judgment reversed.