# Edward Brockhaus & Co. v. Gilson

(Decided March 27, 1936.)

C. C. GRASSHAM and HENRY L. BROOKS for appellant.

EATON & BOYD for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Ewing P. Gilson brought this action to have declared void a contract of sale of stock of the Kentucky Cooperage Company and to recover the contract price of the Kentucky Cooperage Company, Edward Brockhaus & Co., agent of the Kentucky Cooperage Company, Charles W. Inman, Claude Boone, Henry L. Brooks, Stanley B. Young, and Harry G. Inman, directors and officers of the Kentucky Cooperage Company.

We find in Gilson's brief these statements:

"The suit was filed under the provisions of section 165a-23 to 165a-62. This is the act of 1932 known as our 'Blue Sky Law' as amended [Ky. Stats. Supp. 1933, sec. 165a-23 et seq., and sec. 165a-33, as amended by Acts 1934, c. 19]." "The general law on the sale of stock and the sale of bonds is practically the same. Since the enactment of the 'Blue Sky Law' in Kentucky, this common law rule has been changed, but this change is only to the extent as set out in the statute." "When the Legislature of a state legislates on these questions, then the common law rules * * * are superseded by the statutes." "By section 165a-46, the Legislature of the State of Kentucky superseded the common law by enacting the following: 'In addition to the liability now imposed by law, any person or company that, by written or printed circular, prospectus, statement or advertisement of any kind, shall offer for subscription or purchase, any security or shall receive the proceeds accruing from the disposal of securities so advertised, shall be liable to any person who, on the faith of such advertisement or document acquires such security, for the loss or damage sustained by him by reason of any false or misleading statements contained therein, unless such person or company shall establish that he had no knowledge or notice of such publication or such advertisement prior to the transaction complained of, or had just and reasonable ground to believe the statement thereof to be true, etc.' Then by section 165a-41 it is provided: 'Every sale or contract for the sale made in violation of any of the provisions of this act shall be voilable at the election of the purchaser, and the person making such sale or contract for sale, and every director, officer or agent of or for such

seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser in any action at law in any court of competent jurisdiction in the county where the contract was made, or in which the plaintiff resides, upon tender to the seller of the security sold or of the contract made for the full amount paid by such customer * * * '(a) * * * ' '(b) In case such securities consist of other than interest-bearing obligations at the rate of 6 per cent per annum, less in each case the amount of any income from said security that may have been received by said purchaser.' In this case the suit was filed to cancel this contract of sale, a tender was made of the stock, both to the officers of the Kentucky Cooperage Company and to Edward Brockhaus; and appellee was attempting to recover the amount paid for these securities, together with interest thereon at 6% per annum from the date of the sale, as provided by section 165a-41 (b), as above quoted.''

On this statement of his construction of the statutes under which he seeks to recover, we shall review the trial of the issues presented by the pleadings and the evidence, and the verdict of the jury under the instructions of the court.

An examination of the petition discloses that Gilson as a basis of his cause of action charges that the Kentucky Cooperage Company, by and through its agents in charge of selling its stock, induced him to purchase the same ''by employing schemes, artifices and untrue statements verbally and in its false and fradulent advertisements, and made deceptive and untrue, false and fraudulent statements relative to the organization and operation of the Kentucky Cooperage Company, and by reason of said schemes, artifices and false and fradulent statements so made to this plaintiff he was induced to and did buy and pay for the aforesaid 1,400 shares of stock * * * and but for said schemes, artifices, misrepresentations and fraud, as practiced upon him by the said defendants, and each and all of them, by and through their agents and sales representative, Edward Brockhaus and Company, said sale would not have been made and this plaintiff would not have paid therefor the sum of $1,750.00, or any

other amount whatsoever''; and ''that the said schemes, artifices, misrepresentations and fraud, as practiced upon him in the sale of said stock by the defendant, Edward Brockhaus and Company, by and through its agents and salesman, was for the purpose of inducing plaintiff to buy stock and pay therefor * * *; that all of said acts on the part of each and both of said defendants in making said sale of said stock to this plaintiff and inducing him to pay therefor, was in violation of the laws of the State of Kentucky, known as the Kentucky Securities Law, and by reason thereof the afiresaid sale was fraudulent * * *, and is voidable at his option.''

It should be noted that the facts constituting either the artifices, misrepresentation, or fraud are not set forth in the petition. It is a familiar rule that bare allegations of fraud, misrepresentation, or artifices, without a statement of the facts showing wherein and how the same or either was committed, is only a conclusion of the pleader. The facts constituting either to state a cause of action or defense must be alleged. This rule was first announced in Whitehead v. Root, 2 Metc. 584. It was overlooked in Evans v. Stone, 80 Ky. 78, but in all later cases it has been steadfastly adhered to. Machen v. Bernheim, 93 S. W. 621, 29 Ky. Law Rep. 427; Kuhling v. Beidenhorn, 99 S. W. 646, 30 Ky. Law Rep. 811; Star Milling Co. v. Board of Councilmen, Town of Nicholasville (Ky.) 125 S. W. 1051; Cary v. Mire, 143 Ky. 63, 135 S. W. 403; Creekmore v. Bryant, 158 Ky. 166, 164 S. W. 337; Town of Russell v. Whitt, 161 Ky. 187, 170 S. W. 609; Hays Creek Coal Co. et al. v. Eagle Coal Co., 170 Ky. 323, 185 S. W. 1113; Crider v. Sutherland, 186 Ky. 7, 216 S. W. 57; Standard Auto Ins. Ass'n v. West, 203 Ky. 335, 262 S. W. 296; Brenard Mfg. Co. v. Jones, 207 Ky. 566, 269 S. W. 722; Brenard Mfg. Co. v. Raffel, 214 Ky. 604, 283 S. W. 964.

Without either entering a motion to make the petition more specific or definite or demurring thereto, it was controverted by answer, and the action proceeded to trial before a jury.

As a part of the evidence a prospectus of the Kentucky Cooperage Company was introduced and read to the jury. An examination of section 165a-46 of the Blue Sky Law, discloses that the cause of action thereunder, other than that existing at common law at the

time of its enactment, must be predicated on the falsity of "printed or written circulars, prospectus, statements or advertisements" and the right of action thereunder depends on the faith of the purchaser of stock in such advertisements or document.

The evidence is undisputed that each and every statement contained in the prospectus was substantially, if not literally, true, at the time it was exhibited to Gilson by the salesman. Indeed, Gilson did not testify the contrary. As to his right to recover under the Blue Sky Law, the evidence established beyond cavil, doubt, or question, the right of the defendants to a peremptory instruction which was requested by Brockhaus & Co. and refused by the court at the conclusion of the evidence of Gilson and also of the defendants.

Under the prevailing rules of pleading, Gilson's petition failed to state facts sufficient to constitute a cause of action at common law, for fraud or misrepresentation. Since the defendants did not have the court to determine the insufficiency of the petition to state a cause of action, but proceeded to trial and tried the case without objecting to either the petition or the evidence in behalf of Gilson, we shall determine the case as if the pleadings properly presented the issue of fraud and misrepresentation.

The only evidence in behalf of Gilson on this issue is his own testimony. For the sake of accuracy, we present it in his own language:

"Q. At the time he sold you (this stock) did he have any form of prospectus? A. He did.

"Q. Did he give you one of those prospectus forms? A. Yes sir.

"Q. Is that the one he gave you (handing the witness a prospectus)? A. Yes sir.

"Q. Who made all of those figures and writings on this prospectus? A. Mr. Finnegan.

"Q. Mr. Gilson, take that prospectus and tell the jury what Mr. Finnegan said to you about this stock and the representations if any, he made to you about the plant, what it was doing and what it had done? A. Mr. Finnegan, when he showed me this prospectus, told me that Brockhaus and Com-

pany had $200,000.00 worth of this stock. That they had the land, buildings and machinery, a total of $544,737.81 net tangible assets, and he said that 500,000 shares were authorized and outstanding, and showed an asset valuation of $1.08 per share, and the sale price was $1.25 per share which only left a speculative amount of 17 cents on Kentucky Cooperage Company stock. He said they had immediate orders and they would be in operation immediately after Labor Day, and also about that time they would be listed on either the New York or the Chicago stock exchange, and they would open at $2.50 per share.

"Q. Did he make any calculations on this prospectus showing that 17-cent speculation? A. Yes sir, it is right here on this prospectus.

"Q. At the time he was talking to you and gave you this prospectus, how much money did he say had been paid in in cash? A. $200,000.00.

"Q. Show the jury how he indicated that on this prospectus? A. Alright, here it is (indicating on the prospectus).

"Q. That is indicated on this prospectus, showing the $200,000.00. Is that what you mean? A. Yes sir.

"Q. Mr. Gilson, when he was explaining to you those figures, I will ask you to state to the jury what you were discussing at that time; that is, how come him to figure out the sum named to be the speculative value? A. I was figuring on making an exchange of some stock I already had at a value, and he was showing me the speculative amount I would be getting in exchange from one to another.

"Q. Was he explaining that amount as speculative? A. That is right.

"Q. How long had you known Mr. Finnegan? A. For severals years. * * *

"Q. What induced you to make this purchase? A. Mr. Finnegan's statement of what they had.

"Q. Did you have other information about this concern other than that contained in this prospectus and the explanations and statements made to

you by Mr. Finnegan? A. This is all the information I had."

After so testifying, answering isolated and semi-leading questions, he stated that Finnegan represented to him that Brockhaus & Co. had purchased and paid $200,000 for stock and that the Kentucky Cooperage Company had on hand $200,000 cash.

It is shown by the further evidence that Finnegan and Gilson were well acquainted with each other, and that Finnegan had been for some time a salesman of Brockhaus & Co. and the latter were brokers engaged in the business of selling stocks; and that Finnegan, as a salesman of Brockhaus & Co., had theretofor sold and resold stock of other corporations to, and for, Gilson. Finnegan's testimony respecting the prospectus, the pencil calculations thereon, and his statements to Gilson in regard to the same, are substantially the same as the testimony of Gilson. The prospectus and the calculations thereon about which Gilson testified are now before us. It carries on the front page, over the name Edward Brockhaus & Co. and below a photograph of the plant of the Kentucky Cooperage Company, this statement:

"Price, $1.25 per share. The company had agreed to make application to list this stock on the Chicago Curb Exchange. This stock is offered as a speculation."

An average individual already informed that Edward Brockhaus & Co. were brokers, on reading this statement, would be convinced that Edward Brockhaus & Co. were mere brokers in the sale of this stock. In addition to this information, Gilson at that time knew that Finnegan was a salesman of Edward Brockhaus & Co., brokers, and had made previous sales of other stock, to, and for, him. On the opposite pages of the prospectus is a letter addressed to prospective purchasers of the stock of the Kentucky Cooperage Company, signed: "Chas. W. Inman, Pres. Ky. Cooperage Co." The first paragraph of this letter is a statement showing the authorized stock of the Kentucky Cooperage Company to be 550,000 shares; outstanding, 500,000, with 50 shares reserved under option. It is stated therein that the Inman Company had taken $200,000 of the stock of the Kentucky Cooperage Company as an investment, the balance to be paid them in cash. On

this page, are penciled figures: 200,000, which are deducted from the printed figures, 500,000, outstanding shares, leaving 300,000. The next page contains this statement:

"Purpose of Issue

"Proceeds from the sale of this stock are to be used for the acquisition of property, purchase of machinery, and to provide working capital.

"Pro Forma Balance Sheet as of July 15, 1933 (after the completion of this financing).

Assets

| | |
|---|---|
| Cash ............................ | $200,000.00 |
| Land, Buildings, Machinery and Equipment ...................... | $344,735.81 |
| Total Assets ................... | $544.735.81 |

Liabilities

Common Stock
Authorized 550, Shares Par Values $1.00

| | |
|---|---|
| Issued 500,000 Shares Par Value $1.00 | $500,000.00 |
| Capital Surplus .................... | 44,735.81 |
| Total Liabilities ............... | $544,735.81 |

"Of the $200,000.00 listed above, there will be used an estimated amount of $40,000.00 to $50,-000.00 for the purchase of additional 'Up-to-date' cooperage machinery and for the minor changes in the property that may be needed to more perfectly prepare it for the cooperage business."

The above $200,000 and $344,735.81 are added, and they with the total are inclosed by a circle made with a pencil. It is this $200,000 that Gilson claimed in his testimony was represented to him by Finnegan to be cash on hand at that time. The prospectus portrays otherwise.

Inman's letter, when read, itself, discloses that these figures are "Pro Forma Balance Sheet as of July 15, 1933 (after the completion of this financing)." The prospectus also shows the number of shares sold and the number remaining on hand, unsold. Its reading is convincing that the $200,000, which Gilson in his testimony claimed that Finnegan represented to him was

the $200,000 cash on hand, was anticipated to be on hand after the completion of the financing of the Kentucky Cooperage Company. Also, that Brockhaus & Co. were brokers selling the stock. With the information thus imparted to Gilson at the time of, and as a part of, the negotiations of the sale of the 1,400 shares of stock to him, there is no foundation for his insistence that he relied on and was misled by the figures and statements of Finnegan, and thereby induced to purchase the stock.

Gilson's testimony must be considered as a whole in appraising its effect, and the true meaning of his answers to the isolated questions, wherein he stated Finnegan represented to him that Brockhaus & Co. had purchased and paid for $200,000 of the stock and that the Kentucky Cooperage Company had cash, $200,000, must be ascertained by considering all questions propounded to and answered by him. And when thus considered and compared to the contents of the prospectus, it is very plain there is in reality no conflict in the representations of Finnegan respecting the same as narrated by Gilson and the information imparted to him by the prospectus Shaffer v. Southern Bell Tel. & Tel. Co. (La. Sup.) 165 So. 651.

The prospectus contains the statement in reference to listing the stock on the exchange, and whatever statements Finnegan made to him about the same, he thus was informed the stock was not listed at that time, and any statement of Finnegan as to what would occur respecting listing the stock in the future is insufficient to form the basis of an action for fraud and misrepresentation. The same is true as to the Kentucky Cooperage Company thereafter filling orders or beginning operations. Ordinarily, a cause of action for fraud or misrepresentation cannot be predicted on such statements.

In Dolle v. Melrose Properties, Inc., 252 Ky. 482, 67 S. W. (2d) 706, 709, we said:

"A misrepresentation, to be actionable, must concern existing or past facts, and not a future promise, prophecy, or opinion of a future event, unless declarant falsely represents his opinion of a future happening. Electric Hammer Corp. v. Deddens, 206 Ky. 232, 267 S. W. 207; Bunch v. Bertram, 219 Ky. 848, 294 S. W. 805."

For a statement of the same principles, see Kentucky Electric Development Company's Receiver et al. v. Head, 252 Ky. 656, 68 S. W. (2d) 1; Collins-Moore & Co. v. Clement, 256 Ky. 731, 77 S. W. (2d) 1; Kentucky Road Oiling Co. v. Sharp, 257 Ky. 378, 78 S. W. (2d) 38; Coral Gables v. Barnes, 247 Ky. 292, 57 S. W. (2d) 18.

Dishonest expression of opinions contrary to those really entertained by the speaker, only when a deliberately false opinion is expressed or when a promise is made with the present intent of a future breach, or with no intention of carrying out the promise or declaration of future expectations, may be relied on as a basis of a cause of action or a defense. If Finnegan made statements as to the future listing of the stock on the exchange or the future commencement of operations of the Kentucky Cooperage Company or its filling orders, knowing that the Kentucky Cooperage Company had no purpose to do so and not expecting it so to do, such would be a "fraud" or a "false representation" within the meaning of either term, affording Gilson the basis of a cause of action thereon. Electric Hammer Corporation v. Deddens, 206 Ky. 232, 267 S. W. 207. Gilson's evidence falls far short of bringing his right to recover on representations as to what the Kentucky Cooperage Company would do in the future respecting the listing of stock on the exchange or commencing operations or filling orders.

The prospectus, itself, disclosed to Gilson that the Kentucky Cooperage Company was in process of financing itself and that the proceeds of the sales of its stock were "to be used for the acquisition of property and provide working capital." It contains an accurate description of the plant and equipment of the Kentucky Cooperage Company, and shows the status of finances expected to be on hand "after completing the financing." The testimony in behalf of Brockhaus & Co. and their codefendants establishes the utmost good faith of the incorporators, the directors, and officers of the Kentucky Cooperage Company in charge of the management of the Kentucky Cooperage Company, and its finances and business, as well as in the sale of its stock.

When the developed facts are measured by the applicable principles in such case, it cannot be said

that the prospectus speaks deceitfully and falsely of the condition and status of the Kentucky Cooperage Company, and when it and the statements of Finnegan, as explained in the testimony of Gilson, are considered, disinterestedly and impartially, it does not appear to the ordinary mind that the actual facts touching the stock, the state of the finances, the business, and the affairs of the Kentucky Cooperage Company were not fairly and honestly represented by Finnegan to Gilson. Dolle v. Melrose Properties, Inc., supra. Contra, see Dennis v. Thompson et al., 240 Ky. 727, 43 S. W. (2d) 18; Wiser v. Lawler, 189 U. S. 260, 266, 23 S. Ct. 624, 47 L. Ed. 802; Downey v. Finucane, 205 N. Y. 251, 98 N. E. 391, 40 L. R. A. (N. S.) 307; Waller v. Logan's Heirs, 5 B. Mon. 515; and Kentucky Electric Development Company's Receiver v. Head, supra.

The instructions of the court in the light of the principles herein reiterated were improper and prejudicial to the substantial rights of Brockhaus & Co.

Wherefore, the judgment is reversed for proceedings consistent herewith.