## Crabtree v. Petroleum Exploration, Inc., et al.

Feb. 20, 1940.

Charles L. Seale, Judge.

Beatty & Beatty for appellant.

Rose & Stamper, Richard Priest Dietzman, T. D. Shumate, E. C. O'Rear and Allen Prewitt for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

J. D. Crabtree claims to be the owner of two tracts of land in Lee county, the dividing line between which is Little Stinking creek. He has a deed for the tract on what is called the east side of the creek and makes claim by adverse possession to the tract on the west side containing about 200 acres and known as the Curry tract.

This litigation involves the title to the oil and gas in the lands. In 1904, W. S. Curry sold and conveyed the lands to Ernest Blackwell. There is evidence to the effect that in years prior to 1898 various heirs of Marshall Curry deeded their several interests in the land to W. S. Curry and for many years prior to the time he deeded it to Blackwell he had continuously occupied, cultivated and exercised acts of ownership generally over the land; that when Curry moved out in March, 1904, Blackwell moved in and occupied and claimed the land until he sold and conveyed both tracts to Mrs. Alice Taulbee on February 18, 1905. Mrs. Taulbee and husband immediately moved upon the lands and occupied the house formerly occupied by Curry and Blackwell on the Curry tract and claimed to own all the land until they sold and conveyed the same to C. E. Townsend and Bruce Byrd by deed dated February 7, 1918, subject to oil and gas leases theretofore made and hereafter referred to. On August 19, 1916, Alice Taulbee and husband sold and conveyed to Chester L. Wise a one-half interest in all royalties in oil and gas or both which had been or might be produced from both tracts and on August 14, 1917, they leased the land and oil and gas to O. A. Wright for a term of one year or so long as oil and gas might be found. This lease provided for a one-eighth royalty. On January 16, 1918, Alice Taulbee and her husband conveyed to J. M. McDaniel and Harriet McDaniel for a recited consideration of $3,000 one-half of an eighth or one-sixteenth of all royalties on oil produced from the land. On March 30, 1918, E. C.

Townsend and wife sold and conveyed their interest in the land to Bruce Byrd. On August 24, 1918, Byrd sold and conveyed to J. S. Taulbee all his rights, title and interest, if any, in the oil and gas in and under the land, it being recited in the conveyance that the lease to Wright had expired and lapsed. On October 11, 1918, J. S. Taulbee and wife conveyed to the Seaboard Oil Company all oil and gas in and under the land except a one-eighth royalty interest therein which they had theretofore sold and conveyed to other parties. On September 15, 1918, the Seaboard Oil Company leased the oil and gas in and under the land to Petroleum Exploration, a corporation. Later J. M. McDaniel and Harriet McDaniel ratified the lease and leased their interest in the oil to the Petroleum Exploration, reserving their right to royalties. Chester L. Wise was asked to sign a lease or confirmation of the lease to the Petroleum Exploration which he declined to do but agreed to accept one-half of the one-eighth royalties and agreed to and did execute a division agreement. On March 8, 1935, J. D. Crabtree executed an oil and gas lease on the land to Petroleum Exploration. The lease from Crabtree to the company provided in substance that if the lessor owned less than the entire or undivided fee simple estate, the royalties and rentals provided for should be paid to him only in the proportion to which his interest bore to the whole of the rentals and royalties or undivided fee; and in the event of adverse claim or notice to the premises affecting all or any part of the rentals or royalties the lessee might file a bill of interpleader and hold same until it should be determined by a court of competent jurisdiction.

Petroleum Exploration instituted this action against J. D. Crabtree, Seaboard Oil Company, Ashland Oil and Transportation Company, Chester L. Wise, and J. M. and Harriet McDaniel, alleging that it is the owner and in possession of the right to go upon the land and to mine and produce oil and gas; that subject to its right J. D. Crabtree is in possession of and claiming to be the owner in fee of the surface of the land; that the Seaboard Company is the owner of the oil and gas in and under the land subject to its lease to plaintiff; that J. M. and Harriet McDaniel and Chester L. Wise claim to be the owners of royalty interests under the convey-

ance hereinbefore set out. It set up the lease from the Seaboard Company and from Crabtree and alleged that it had drilled one well producing oil on the land and had made preparations to drill another but that Crabtree had forbidden it to enter upon the land and had prevented it by threats to enter or to drill further thereon. It alleged grounds for such relief and asked that Crabtree be enjoined and restrained from interfering in any way with its right to enter upon the land and to produce or market oil and gas therefrom and that he and the Seaboard Company, Chester L. Wise and J. M., and Harriet McDaniel be required to answer and set up any claim they might have to oil and gas in the land.

By their separate answer and cross petition Chester L. Wise and J. M. and Harriet McDaniel set up their claim to the royalties under their respective leases or conveyances, and by answer, set off and counter claim, as amended, J. D. Crabtree denied the allegations of the petition and affirmatively alleged that the lease from him to the plaintiff was procured through fraud, misrepresentation and decit; that plaintiff had failed and refused to comply with the terms of the lease to pay him royalties as therein provided and had thereby forfeited its lease; that without right it had gone upon his lands and damaged same in sums specified; that the Seaboard Company was not and had not been a corporation of the state of Delaware or any other state and that it had not been in existence since April 1, 1928, with power to acquire oil and gas property, or to contract or be contracted with, etc.

Issues were completed by a traverse of the affirmative allegations of the various pleadings. On final hearing it was adjudged that Chester L. Wise was the owner in fee of an undivided one-half interest in the royalties or a one-sixteenth interest in the oil royalty interest and that his title to such interest be quieted against J. D. Crabtree; and J. M. and Harriet McDaniel are the owners of a one-half interest in the royalties, being a one-sixteenth oil royalty interest in fee simple and that their title thereto be quieted against Crabtree; that J. D. Crabtree be perpetually enjoined and restrained from interfering in any way with the right of plaintiff to enter upon the lands and to produce and market oil and gas and their constituents therefrom; that the counter

claim of J. D. Crabtree be dismissed. J. D. Crabtree is appealing.

One of the principal grounds relied on for reversal is that the Seaboard Company was not in existence at the time it attempted to make the lease to Petroleum Exploration, because, as shown by certified copies from the office of the secretary of state of Delaware where it was incorporated, its charter had been declared forfeited on April 1, 1928, because of its failure to pay taxes to the state as required by law.

The case of Curtis-Jordan Oil & Gas Company et al. v. Mullins, 269 Ky. 514, 106 S. W. (2d) 979, determines this and a number of other grounds argued by appellant adversely to his claim. That opinion cites with approval the case of Shadoin v. Sellars, 223 Ky. 751, 4 S. W. (2d) 717, holding that a corporation has existence beyond its corporate life for the purpose of winding up its affairs. There is neither pleading nor proof that the common law of Delaware is different, therefore, it will be presumed that the common law prevails in Delaware and that it is the same as the common law of the forum. Stewart's Adm'x v. Bacon, 253 Ky. 748, 70 S. W. (2d) 522; Dortch's Ex'r v. Willoughby, 272 Ky. 231, 113 S. W. (2d) 832.

Reference is made in brief to records in a district court of the United States indicating that in 1920 and a few years thereafter the Seaboard Company was in receivership, but there is no showing how long this receivership continued. And it should be kept in mind that the lease from the Seaboard Company to Petroleum Exploration was made in 1918. There is nothing in the records introduced that would affect the validity of that lease and this court cannot go into the field of speculation as to why gas and oil rights of the Seaboard in the lands in controversy were not disposed of by the receiver, if any receiver in fact had authority to make such conveyance.

It is further argued that Petroleum Exploration failed to show paper title deducible from the Commonwealth of Kentucky to oil and gas rights in the land covered by the lease. So far as the lands on the east side of the creek are concerned that was unnecessary since the adverse parties claim under common source

of title; and not only so, but the evidence shows that W. S. Curry and those claiming under him occupied and had continuous adverse possession and control of the land for a period much longer than 15 years before it was conveyed to Alice Taulbee. ' After such possession and claim of ownership had continued for more than sufficient time to ripen into title, there was a conveyance severing the mineral or oil and gas estate in the lands. In Curtis-Jordan Oil & Gas Co. v. Mullins, supra, it was held that the title and ownership of the surface of the land did not carry title or possession to the mineral estate thereunder which had been sold and severed, but that the presumption would prevail that the owner of the surface was merely trustee of the mineral estate for the use and benefit of the owners thereof; that limitation does not run in favor of the owner or holder of the surface against the owner of the minerals merely because of ownership or possession of the surface for any length of time; that in order for such owner of the surface to acquire title by adverse possession to severed minerals in the land, he must develop, open and work the mine continuously and uninterruptedly under claim of right for the statutory period or he must openly disavow or repudiate the trust and give the owner of the minerals notice thereof. (See also authorities cited in that opinion.) Although there is evidence that appellant has been in possession and claiming the lands in controversy for more than 15 years, such possession did not carry with it adverse possession to the mineral estate which had been separated from the surface. Furthermore appellant testified that he entered on the Curry tract under permission of Bruce Byrd and there is no showing how or when, if ever, the character of his occupancy or holding changed.

It is further argued that appellant's plea of fraud, misrepresentation and deceit should prevail. His plea of fraud, etc., is insufficient in that it is in general terms and does not undertake in any way to set out what the fraud consisted of. Therefore it was nothing more than mere conclusion. Edward Brockhaus & Co. v. Gilson, 263 Ky. 509, 92 S. W. (2d) 830; Goerter v. Shapiro, 254 Ky. 701, 72 S. W. (2d) 444, and cases cited in those opinions. However, if there had been a specific plea of fraud the evidence would not be sufficient to sustain it.

The evidence merely shows that when the lease was presented to appellant to sign he signed it without reading it because he was in a hurry. There is no proof to show that he was by misrepresentation, deceit or fraud procured to sign it.

Furthermore we are constrained to hold appellant had no title to the oil or gas in the land when he executed the lease. This lease was apparently taken by the Petroleum Exploration as a matter of precaution because of the claim appellant was making, but it did not render its claim to the oil and gas amicable to the interfering claim of appellant by taking a lease or conveyance as a means of quieting its title or preventing litigation. Bryant v. Prewitt, 132 Ky. 799, 117 S. W. 343; Anderson v. Proctor Coal Co., Ky., 128 S. W. 85.

What we have said concerning the grounds discussed renders it unnecessary to discuss other grounds argued by appellant.

Judgment affirmed.