## JOHNSON v. LOWERY.

Court of Appeals of Kentucky.

June 18, 1954.

Rehearing Denied Oct. 1, 1954.

Delmer D. Howard, William H. Smith and Taylor G. Smith, Lexington, for appellant.

William E. Sloan and James E. Banahan, Lexington, for appellee.

MOREMEN, Justice.

Appellee, Mary E. Lowery, recovered judgment against appellant, J. B. Johnson, in the sum of $9,000 which represented the difference between the actual value of the property sold to her by appellant and the value he had represented it to have at the time of the transfer.

The series of transactions which culminated in this judgment began in 1946 when Mrs. Lowery obtained the services of Mr. Johnson, a skilled real estate agent, to assist her in the purchase of a house on North Limestone Street in Lexington. After the purchase, Mrs. Lowery became dissatisfied with the property and was experiencing difficulty in meeting her installment payments on the mortgage. Through the efforts of Johnson, this property was exchanged for a farm in Breckinridge County of about 760 acres which was heavily mortgaged. She was unable to operate the farm successfully so she again sought the assistance of Johnson for the purpose of exchanging it for property more suitable to her needs.

About this time, G. Stanley Davis was attempting to exchange a 45 acre farm he owned in Fayette County for a larger one. The 45 acre farm was near to the limits of the city of Lexington. Mrs. Lowery did not want the 45 acre farm because it did not have a house on it. However, a three-way deal was worked out. Davis received title to the 760 acre farm, Johnson received title to the 45 acre tract and in payment to appellee for her equity, it was agreed that she would receive a house and lot situated at 515 South Upper Street and be paid

$1,000 in cash. The trade of the two farms was consummated and Mrs. Lowery asked appellant to convey to her the house at 515 South Upper Street. It was discovered that the title to this property was defective and she did not obtain title to it.

Some time passed and the parties were unable to agree on a suitable house for Mrs. Lowery so she obtained the services of an attorney. A contract was drafted which provided that Mrs. Lowery would get $2,000 in cash and Mr. Johnson would procure property for her within six months, of a value of not less than $10,000. It was provided also that the parties would try to agree on the value of the property and if unable so to do, a method of arbitration would be employed.

Then came the deal which is the heart of this litigation. Mr. Johnson owned a large twelve room brick residence at 374 Aylesford Place in Lexington. Some income in connection with the building resulted from rental of rooms to students at the University of Kentucky. Mrs. Lowery agreed to take this property. Mr. Johnson advised Mrs. Lowery that he would sell this house for $26,000 which he stated was the true value of the real estate. There was a mortgage in the principal sum of $8,500 on it and appellant had Mrs. Lowery execute a note to him secured by a vendor's lien in the amount of $7,500, making the total encumbrance against the property $16,000. The balance of the purchase price of $10,000 was paid by satisfaction of the contract under which appellant Johnson had agreed to convey to appellee, Mrs. Lowery, property worth $10,000. A few months after this transaction, appellee exchanged this property for property located in Berea which was later exchanged for other property. It is not necessary to trace these transactions.

Mrs. Lowery predicated her action, which resulted in the judgment herein, upon the established rule that a real estate broker is the type of agent who owes his principal absolute good faith and utmost fair dealing in transactions between them. Hurt v. Sands Co., 236 Ky. 729, 33 S.W.2d

653, and Jones v. Todd, Ky., 256 S.W.2d 533. She insists appellant violated this rule when he falsely represented that the property was of the value of $26,000 when in fact it was not worth at the most more than $17,000 at the time of the sale.

Appellee introduced Henry L. Turner, a real estate agent of about 15 years' experience, who testified the property in question sold in 1946 for $15,000 and in his opinion it was worth about $16,500 at the time. She also presented the deposition of Mr. Evanda C. Johns, also a real estate broker of considerable experience, who testified that he had the property listed for sale in 1946 for $17,000. He estimated the property was worth between $16,500 and $17,000 during the period in question. On the other hand, appellant introduced R. W. Crabtree and James E. Head, experienced real estate agents, who testified that in 1947, the property was worth $24,000 or $25,000. Under the circumstances, we believe the proof in this case is sufficient to justify the finding of the master commissioner and the chancellor that appellant, J. B. Johnson, while occupying this fiduciary relationship, knowingly misrepresented the value of the house and lot in question.

Appellant, while in no way conceding a misrepresentation, insists that even in cases involving a fiduciary and his principal, a misrepresentation as to value by a fiduciary to his principal is not a substantial basis for an action sounding in deceit, particularly in cases where the purchaser has had an equal opportunity to ascertain for himself the true value. This court has indicated approval of such a rule in several cases: Bently v. Stewart, 180 Ky. 23, 201 S.W. 978; German National Bank's Receiver v. Nagel, 82 S.W. 433, 26 Ky. Law Rep. 748; McCoun v. Nickell, 208 Ky. 20, 270 S.W. 457, and McGuffin v. Smith, 215 Ky. 606, 286 S.W. 884, and pointed out in Vokes v. Eaton, 119 Ky. 913, 85 S.W. 174, 177, that: "Puffing by sellers is universal, and every one buys knowing that he must exercise his own judgment on matters of opinion expressed by the seller." However, when the rule pertaining to false representation concerning value comes in conflict with the rule requiring utmost good faith by a fiduciary, the former rule must yield. A good summary of this effect may be found in Restatement of the Law, Torts, Sec. 542, which reads:

"The recipient in a business transaction of a fraudulent misrepresentation of the maker's opinion upon facts known to the recipient is not justified in relying thereon in a transaction with the maker unless the opinion is material and the maker

"(a) holds himself out as having special knowledge of the matter which the recipient does not have, or

"(b) stands in a fiduciary or other similar relation of trust and confidence to the recipient, or

"(c) has successfully endeavored to secure the confidence of the recipient, or

"(d) knows that the recipient will rely on his opinion."

We think the facts presented here were sufficient to bring this case under all of the exceptions above set forth.

Appellant also contends that if any fiduciary relationship had existed between appellee and him, it was terminated when she employed an attorney to represent her after the 760 acre farm was transferred. The attorney who represented her, J. A. Edge, testified that the only purpose he served was to obtain a specific agreement from appellant that he would give Mrs. Lowery $2,000 in cash and find a home for her. Mr. Edge said he did not advise her concerning any aspect of the real estate deal, that he knew nothing about real estate values and was unqualified to advise her concerning the property. We do not believe this action terminated the fiduciary relationship and even if it could be so treated, the prior relationship was immediately resumed and we have no doubt that Mrs. Lowery relied upon appellant's judgment.

Appellant further contends that Mrs. Lowery waived any right of action she had against him when she failed to take advantage of the clause of the contract by which it was agreed that if she became dissatisfied with the Aylesford Place property within twelve months from the date of the conveyance, she would be permitted to reconvey the property to him and enter into a new contract for the exchange of other property "at such price and on such terms as the parties hereto mutually agree upon." We are of opinion that this clause of the contract was unenforceable by either party because it was no more than an agreement to contract in the future. To be enforceable and valid, a contract to enter into a future covenant must specify all material and essential terms and leave nothing to be agreed upon as a result of future negotiations. Fisher v. Long, 294 Ky. 751, 172 S.W.2d 545, 549; 12 Am.Jur., Contracts, Sec. 24.

Judgment affirmed.