**J. S. McHARGUE, Appellant,**

v.

**FAYETTE COAL & FEED COMPANY, a Corporation, Appellee.**

Court of Appeals of Kentucky.

Oct. 14, 1955.

Elmer Drake, Lexington, for appellant.

Wallace, Turner & Reed, Lexington, for appellee.

STANLEY, Commissioner.

The appellee, Fayette Coal and Feed Company, sued the appellant, J. S. McHargue, to recover $364.30 balance due on a merchandise account for stock feed. McHargue admitted the purchase and counterclaimed for $27,600 damages. At a pretrial conference it was agreed (as, indeed, it appears in the pleadings) that the counterclaim was not based on a breach of any express or implied warranty but upon misrepresentation of the feed and certain dairy equipment he had bought from the plaintiff.

The case was tried without a jury. At the conclusion of the defendant's evidence, the court stated he would sustain the plaintiff's motion for a judgment for $364.30 on its complaint and for dismissal of the counterclaim. He expressed the view that as the plaintiff had purchased the machinery some three years before the items of account sued on, a counterclaim was not a proper method of presenting a claim of misrepresentation or fraud or of defective quality. However, the court stated "in addition to that" he did not think the evidence on the counterclaim had proved fraud or misrepresentation; that it showed nothing more than that the plaintiff's salesmen were merely "puffing" their merchandise and recommending it as being the best on the market. The statement of findings of facts and conclusions of law and the judgment all show the case was decided on its merits. So, we need not decide, as appellant contends we should, that the counterclaim was maintainable under CR 13.02 and 18.01.

During 1952 the appellant had purchased of the appellee three dairy stalls and some milking machinery and a certain brand of stock feed from time to time. The counterclaim charged the equipment to have been defective and improperly installed and by reason thereof it had "brought about a nervous and an upset condition to the cows milked therein, thereby causing a loss of milk and damage to said cows in the amount of $12,500." A second paragraph charged that a "combined milker" had been represented by the plaintiff to be "the best and most satisfactory milker on the market" and one which "would result in great saving of time and labor in the operation of the defendant's dairy and would prove to be satisfactory in every way", but because all this was untrue a great quantity of milk was lost. As a result of this it is charged the defendant had suffered $12,500 in damages.

It was alleged in the counterclaim that stock feed of a certain brand had been represented to the claimant as being superior to any and all other stock feed of a similar nature and by its use the yield of milk and the growth of calves would be vastly enhanced. But, it was charged, its use had "utterly failed to support" the representations and that since the feed was of no value, the claimant should be reimbursed $1,500.

An additional item of damage claimed was that a milk cooler purchased for $600 was represented as being serviceable for ten years, but it was never satisfactory and the seller had been so advised but had failed to remedy same so that the claimant purchaser was compelled to spend $250 for repairs and that he should recover $850 on this account.

The evidence offered by the defendant, now appellant, was in accord with his pleading and did not go beyond that.

Concerning the stock feed, Professor McHargue testified he had been using another kind when the defendant's salesman and a representative of the manufacturer showed him a tag containing the chemical analysis of the feed; he expressed interest since he was a chemist; the salesman assured him the feed had better value and was more nutritional than other kinds and stated "he would assure me, if not guarantee, that the milk supply would be increased over what he had been getting from other feed"; furthermore, that calves to which it might be fed would "grow more thrifty and faster and gain weight faster than" they would upon other feed. None of these representations proved to be true.

The milk cooler was represented to be "very efficient", and the milking machine would be easier to operate and be a time saver as stated in the advertising material given him. These representations proved to be untrue. The particular objection to the machine was that it was necessary to wash out the pipes and tubes after each use instead of being able to clean it by running a solution through the machine and rinsing it out. All these representations proved to be untrue. Metal cow stalls were obtained by the salesman of the appellee company from another concern for Professor McHargue although he paid the appellee for them. He was assured when he bought the stalls that they were the best on the market. Some defects developed and the purchaser made some changes and repairs in the installations. But his cows were discontented. They never did like the stalls or any of the equipment and became frightened and broke out on several occasions.

■ The evidence of loss by reason of the alleged misrepresentations is speculative and unconvincing.

■ We agree with the chancellor that all this proved nothing more than "sales talk" or "puffing" which is universal and an expected practice. Such representations do not amount to actionable misrepresentation. This is certainly true where the parties deal at arm's length and have equal means of information.

■ Actionable misrepresentation must relate to a past or present material fact which is likely to affect the conduct of a reasonable man and be an inducement of the contract. A mere statement of opinion or prediction may not be the basis of an action. The representation must be short of a warranty but sufficient to deceive and to create in the mind a distinct representation of a fact. Crawford & Gatlin v. M. Livingston & Co., 153 Ky. 58, 154 S.W. 407, 44 L.R.A.,N.S., 640; Mantle Lamp Co. v. Rucker, 202 Ky. 777, 261 S.W. 263; 77 C.J.S., Sales, §§ 43, 310c. In this case the purchaser was an experienced dairyman.

He was a chemist with the Agricultural Experimental Station of the University of Kentucky from 1912 to 1948. He had participated in the installation of the machinery and had made alterations and changes in the stalls. He had not offered to return any of the equipment or machinery or, indeed, make any substantial claim of damages until this suit was brought against him, and had paid for it in due course of business. We find no merit whatever in the claim of legal misrepresentation and damages therefor.

The judgment is affirmed.