# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2006-SC-000471-DG
AND
2007-SC-000155-DG



DATE 8/27/09 *Kelly Klober D.C.*

FLEGLES, INC.                         APPELLANT/CROSS-APPELLEE

V.

ON REVIEW FROM COURT OF APPEALS
CASE NOS. 2004-CA-002487-MR AND
2005-CA-000162-MR
CARLISLE CIRCUIT COURT NO. 03-CI-00005

TRUSERV CORPORATION             APPELLEE/CROSS-APPELLANT

## OPINION OF THE COURT BY JUSTICE ABRAMSON

## <u>AFFIRMING</u>

Following a five-day trial, a Carlisle County jury awarded Flegles, Inc., a family-owned hardware and lumber business located in Bardwell, Kentucky, $1.3 million in damages allegedly arising from the company's 1999-2000 construction of and move to an expanded store. Flegles claimed that the ill-fated move was induced by fraudulent business projections provided by its wholesale cooperative, TruServ Corporation,[1] and further that TruServ's misrepresentations about its prices and its own operating losses in the late 1990s induced Flegles to remain a member of the cooperative and to proceed with its expansion. Holding that as a matter of law none of the alleged misrepresentations could support a claim for fraud, the Court of Appeals

---

[1] TruServ Corporation has since changed its name to TruValue Company.

reversed and in effect ordered the dismissal of Flegles' complaint. We granted Flegles' petition for discretionary review to consider its contention that the Court of Appeals misapplied controlling precedent. We also granted TruServ's cross-petition for discretionary review to consider its contention that the trial was tainted by biased jurors. Agreeing with the Court of Appeals that TruServ is entitled to judgment as a matter of law, we affirm that Court's ruling and so need not address TruServ's cross-petition.

## RELEVANT FACTS

The Flegles family has operated a hardware and lumber business in Bardwell since the 1920s. In the 1970s, the company joined the Cotter & Company cooperative, and at that time or soon thereafter began using the True Value® trade name. In 1997, when Cotter merged with Servistar Coast to Coast Corporation to form TruServ, Flegles retained its membership in the merged organization and continued to use the True Value® name until late 2002, when TruServ terminated Flegles' membership and it joined the Ace® cooperative.

TruServ is a Delaware corporation with its headquarters in Chicago, Illinois and, as noted, is the wholesaler for, among others, True Value® hardware stores. As a cooperative wholesaler, TruServ does not retain the yearly profits from the sale of merchandise and services to its members, but after deducting its operating expenses from its revenues it distributes any remaining profits to the cooperative's members based on the member's share of the year's purchases. Members thus have use of TruServ's marks and benefit

from the group buying power, group billing procedures, and other services TruServ offers.

In the early 1990s, Flegles became desirous of expanding, in part at least to stave off competition in the surrounding area from "box" stores such as Lowe's and Wal-Mart. It acquired land for a new building and in 1996 availed itself of business audits which TruServ—then Cotter and Company—provided free-of-charge to its qualifying members. The audit was to help determine whether an expansion was feasible and if so what form the expansion should take. In 1996 and 1997, TruServ representatives used computer programs to process Flegles' financial and other data and generated a 500-page report with projections indicating that Flegles' desired expansion to a 32,000 square-foot facility could be profitable if the new store included a product rental program, known as "Just Ask" rental (the "1996 Audit"). In 1999, Flegles asked TruServ to update the 1996 Audit, and again using data supplied by Flegles, a TruServ representative generated a "guide" which projected profits for both the rental program and the expanded store (the "1999 Guide"). At that point Flegles proceeded with its expansion, and the new store opened in January 2000. Unfortunately, Flegles encountered higher than expected building costs, which necessitated substantial debt. Also, owing largely to a downturn in the local construction industry, its business during the new store's first three years did not meet TruServ's projections, particularly the projections regarding rental profits.

In the meantime, TruServ's house was not entirely in order. Following the aforementioned 1997 merger with Cotter, inventory accounting problems led TruServ to overstate its profits for fiscal years 1997-99, with the result that in 2000 the errors became public and the company was obliged to declare a $131 million loss.

When the parties "fell out" over Flegles' unpaid cooperative debt in early 2003, Flegles brought this action alleging that its expansion had been fraudulently induced by TruServ's faulty expansion advice as well as its failure to provide accurate financial reports. The misrepresentations, Flegles alleged, caused losses of more than $2 million. At a jury trial in July 2004, Flegles was awarded fraud damages of $1.3 million. As noted above, the Court of Appeals reversed, and Flegles now seeks reinstatement of the trial court judgment. It contends that the Court of Appeals misconstrued the rule that statements of mere opinion or statements about the future will not support a claim of fraud. Convinced that the Court of Appeals correctly applied existing law, we affirm.

**ANALYSIS**

## I. TruServ's Forward-Looking Expansion Advice Did Not Amount To An Actionable Fraudulent Misrepresentation.

In reversing the trial court's judgment and dismissing Flegles' fraud claim, the Court of Appeals correctly observed that in Kentucky such a claim requires proof, by clear and convincing evidence, of the following six elements: (1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to

4

act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff. United Parcel Service Company v. Rickert, 996 S.W.2d 464 (Ky. 1999). The plaintiff's reliance, of course, must be reasonable, McHargue v. Fayette Coal & Feed Company, 283 S.W.2d 170 (Ky. 1955), or, as the *Restatement* states, "justifiable." *Restatement (Second) of Torts* § 537 (1977). The misrepresentation, moreover, must relate to a past or present material fact. "A mere statement of opinion or prediction may not be the basis of an action." McHargue, 283 S.W.2d at 172. This means, as the Court of Appeals held, that forward-looking opinions about investment prospects or future sales performance such as those involved in this case generally cannot be the basis for a fraud claim.

There are, of course, recognized "deception" exceptions to this general rule where the opinion either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham. In Kentucky Electric Development Company's Receiver v. Head, 252 Ky. 656, 68 S.W.2d 1 (1934), for example, a Depression Era case in which securities agents bilked a seventy-year-old woman by grossly misrepresenting the current condition of the company whose stock they were pushing and by making outlandish promises about its future performance, the former Court of Appeals held that a declarant who "falsely represents his opinion of a future happening" could be subject to liability. *Id.* at 3. In that case, a misrepresentation about prompt future payment of a dividend was actionable

5

because the company was not then financially able to pay dividends, there was no present intention to pay the dividend, and the representation was made to deceive the buyer. Similarly, in Edward Brockhaus Co. v. Gilson, 263 Ky. 509, 92 S.W.2d 830 (1936), the Court recognized that misrepresentations regarding the future listing of a company's stock on a stock exchange and the company's commencement of operations would be actionable if the speaker knew there was no present intent to do so.

As the Head Court emphasized, however, these narrow exceptions do not relieve market participants, particularly experienced participants such as Flegles, of their duty to protect themselves:

> It is a settled rule that mere commendation, or even false representation by the seller of stock as to its value, when the purchaser has an opportunity to ascertain for himself such value by ordinary vigilance or inquiry, has no legal effect on the rights of the contracting parties, even when made with the intention to deceive.

68 S.W.2d at 3 (citation omitted). In short, the law imposes upon recipients of business representations a duty to exercise common sense. Accordingly, other courts attempting to delineate the scope of these exceptions have held that absent misrepresentation of objective data, "forward-looking recommendations and opinions are not actionable . . . merely because they are misguided, imprudent or overly optimistic." In re Salomon Analyst AT&T Litigation, 350 F.Supp.2d 455, 467 (S.D.N.Y. 2004) (citing Stevelman v. Alias Research Inc., 174 F.3d 79, 85 (2nd Cir. 1999)).

Confronted with the unavoidable fact that the 1996 Audit and the 1999 Guide are projections about future events, Flegles maintains that TruServ misrepresented the past or existing facts on which they were based. Flegles complains that TruServ misrepresented the reliability of its business audits in several ways: by characterizing them as "customized" when they were based in part on the average performance of TruServ members; by referring to the "Just Ask" rental program as a "cash cow" and estimating the return from that program on the basis, again, of averages not necessarily reflective of Flegles' circumstances; and in the 1999 Guide by generating a projection of the rental program's performance based on optimistic market assumptions but failing to reveal two projections based on less optimistic assumptions. None of these allegations constitutes the sort of misrepresentation of objective fact required by the aforementioned exceptions.

TruServ's audits were customized at least to the extent of being based on Flegle's financial records and facts about its layout and inventory, data that Flegles itself provided. Otherwise, the "customized" and "cash cow" references are nothing but trade talk or "puffing," which is not actionable as fraud. McHargue, 283 S.W.2d at 172 ("'sales talk' or 'puffing' which is universal and an expected practice"). Nor does the fact that TruServ's analyses may not have been particularly sophisticated or precise—employing broad averages where more focused comparisons might have been more accurate—entitle Flegles to relief. Although Flegles complains that the TruServ representatives it questioned could not account for the manner in which a member survey

underlying the 1999 Guide was complied, that fact is hardly clear and convincing evidence of fraud, inasmuch as there was no evidence that those representatives had anything to do with producing the survey. More significantly, there is no claim or evidence that TruServ falsified the averages it used or based its predictions on objectively false data. The mere lack of sophistication or precision is not fraud.

Alternatively, Flegles contends that even if TruServ did not misrepresent objective facts underlying its opinions, it misrepresented the opinion itself in the 1999 Guide when it generated a relatively optimistic projection of potential profits from the "Just Ask" rental program without also disclosing two less optimistic projections. As noted above, however, mere optimism, even excessive optimism, is not actionable. Surely Flegles, in business for over seventy years, did not need TruServ to tell it that market projections are subject to many variables and that less desirable results are always possible.

TruServ, moreover, did provide warning. Its analyses were accompanied by disclaimers that they were based upon estimates and averages and were "for general guidance only and do not represent any guarantee of performance." Disclaimers, to be sure, as the Court of Appeals recently observed, do not insulate a party from its fraud, Radioshack Corporation v. Comsmart, Inc., 222 S.W.3d 256 (Ky. App. 2007), but they do put the opposing party on notice that projections ought not to be uncritically relied upon. In the face of the disclaimers in this case, a case in which there is no plausible argument that the defendant lied about actual facts, but only, if anything, failed to share all of

8

its opinions (i.e., all three projections), Flegles' action "boils down to the hopelessly expansive claim that investors can sue an analyst because there is some possibility that his 'actual' opinion was slightly less pro and more con than what he presented." In re Salomon Analyst AT&T Litigation, 350 F.Supp.2d at 468. This is not Kentucky law. Flegles would make TruServ an insurer of its expansion merely because it failed to detail for Flegles all of the obvious risks that the expansion entailed.

Flegles also maintains that its fraud claim is sustainable because TruServ was its fiduciary. In Johnson v. Lowery, 270 S.W.2d 943 (Ky. 1954), the former Court of Appeals held that a real estate agent, as a fiduciary, was subject to liability for asserting a fraudulent opinion overvaluing the house he had sold to the plaintiff. The court recognized the general rule that "puffing" by sellers is not actionable, but relying on Section 542 of the *Restatement (Second) of Torts*, noted that "when the rule pertaining to false representation concerning value comes in conflict with the rule requiring utmost good faith by a fiduciary, the former rule must yield." *Id.* at 945.

Section 542 of the *Restatement (Second) of Torts* (1977-2008), cited favorably in Johnson v. Lowery, supra, provides that

> [t]he recipient of a fraudulent misrepresentation solely of the maker's opinion is not justified in relying upon it in a transaction with the maker, unless the fact to which the opinion relates is material, and the maker:
> (a) purports to have special knowledge of the matter that the recipient does not have, or
> (b) stands in a fiduciary or other similar relation of trust and confidence to the recipient, or
> (c) has successfully endeavored to secure the confidence of the recipient, or

9

(d) has some other special reason to expect that the recipient will rely on his opinion.

Flegles contends that it was justified in relying on TruServ's allegedly misleading expansion advice not only under the fiduciary provision of clause (b) but under every clause of this section. However, as the *Restatement's* commentary makes clear, this section is not meant to alter the general rule that

> [i]f the subject matter of the transaction is one upon which both parties have an approximately equal competence to form a reliable opinion, each must trust to his own judgment and neither is justified in relying upon the opinion of the other.

Section 542, Comment d. Flegles not only had "approximately equal competence" in the hardware business, it had very specific competence and knowledge about the construction industry and competitors in the Bardwell area where it was expanding. This general premise aside, none of the four clauses of Section 542 is applicable to the Flegles/TruServ relationship.

According to the commentary, clause (a) refers to transactions in which the seller's expertise is in an area about which laymen know nothing and so must rely on the specialist vendor, transactions such as sales of valuable jewels, valuable paintings, or legal services. The services at issue in this case, on the other hand, involved experienced businesses on both sides pooling their judgment about business prospects. TruServ did not claim expertise in reading the business future, but merely offered Flegles the collective experience of TruServ's members. TruServ's knowledge, therefore, was not the sort that

10

would excuse Flegles from exercising its own judgment about expanding a business it had operated since the 1920s.

Clause (b) does not apply because TruServ was not Flegles' fiduciary. TruServ's directors and officers may well have owed fiduciary duties to the corporation and to its shareholders, TruServ Corporation v. Chaska Building Center, Inc., 2003 WL 924509 (N.D.Ill 2003); KRS 271B.8-300; KRS 271B.8-420; Acree v. E.I.F.C., Inc., 502 S.W.2d 43 (Ky. 1973), but Flegles has cited no authority holding that a cooperative wholesaler owes a fiduciary duty to its members as customers. The relationship between wholesaler and retailer, of course, is not one of the traditional fiduciary relationships, but is generally an ordinary, arms-length market arrangement. A fiduciary, moreover, is one who has expressly undertaken to act for the plaintiff's primary benefit. Steelvest, Inc. v. Scansteel Service Center, Inc., 807 S.W.2d 476 (Ky. 1991). Although fiduciary relationships can be informal, a fiduciary duty does not arise from the universal business duty to deal fairly nor is it created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary. In re Sallee, 286 F.3d 878 (6th Cir. 2002) (discussing Kentucky fiduciary law and noting that even banks do not typically have a fiduciary relationship with their customers).

Flegles contends that TruServ converted itself to a fiduciary by undertaking to analyze Flegles' expansion prospects, but as the discussion above makes clear, TruServ did not control any aspect of Flegles' business, it did nothing to prevent Flegles from obtaining other information and advice

11

concerning the expansion, and it never undertook to act for Flegles' primary benefit, but always acted, openly, for the benefit of the cooperative as a whole, as it had a duty to do. The relationship between the parties, wherein Flegles was authorized to use trademarks, received business advice, and had access to standardized products, was much like the relationship between franchisor and franchisee, which courts have almost universally held not to be a fiduciary one. *See* William L. Killion, "Existence of Fiduciary Duty Between Franchisor and Franchisee," 52 A.L.R.5th 613 (1997) (noting the "great majority of courts" have refused to hold that the relationship between franchisor and franchisee or between manufacturer and distributor is a fiduciary one). That widely accepted rule is persuasive here, where TruServ did nothing inconsistent with it so as to suggest that it was assuming a fiduciary role. Flegles' decision to rely exclusively on TruServ's analyses did not change that fact. Clause (b), therefore, does not apply.

Clauses (c) and (d), according to the *Restatement* commentary, refer to situations in which the party expressing an opinion seeks to induce reliance by playing upon a non-business relationship with the recipient, such as friendship or kinship, or in which he takes advantage of some disability in the recipient, such as his illiteracy or lack of intelligence. Neither clause is pertinent to this case.

In sum, the general rule remains that mere statements of opinion or prediction of future performance will not support a claim of fraud. The Court of Appeals correctly held that Flegles' allegations concerning TruServ's

12

expansion advice failed under this general rule and that no "deception" exception to the rule applies.

## II. TruServ's "Puffery" About its Prices Did Not Defraud Flegles, And Its Failure To File Accurate Financial Statements Did Not Cause Flegles' Losses.

Flegles also contends that TruServ defrauded it by claiming to be the wholesaler with the best prices and by failing to disclose in a timely manner the losses it suffered in the late 1990s. The "price" contention is meritless, for as noted above "best price" claims are mere puffing and do not amount to fraud. Nothing prevented Flegles from shopping for better prices if it so desired. Otherwise, Flegles argues that had it known of TruServ's compromised financial health it would, perhaps, have sought another wholesaler or would at least have been more skeptical about TruServ's advice and so, in either event, would not have undertaken the expansion. Aside from being utterly speculative, the argument fails because, as the Court of Appeals correctly observed, to be actionable the alleged misrepresentation must not only have induced the recipient's reliance, but must also have caused the recipient's loss. United Parcel Service Company, supra.

"Cause" here, of course, means legal or proximate cause, which "consists of a finding of causation in fact, *i.e.,* substantial cause, and the absence of a public policy rule of law which prohibits the imposition of liability." Deutsch v. Shein, 597 S.W.2d 141, 144 (Ky. 1980). In Deutsch, a negligence case, we borrowed the following discussion of "substantial cause" from the *Restatement of Torts (Second)* § 431 Comment a (1965):

13

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. [This] is necessary, but it is not of itself sufficient. The negligence [here the misrepresentation] must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

597 S.W.2d at 144. Even if Flegles relied on TruServ's apparent financial health in remaining a member of the cooperative and going forward with its plans, the cooperative's accounting problems had absolutely nothing to do with the viability of Flegles' expansion, and so under <u>Deutsch</u> the failure to reveal those problems cannot be deemed a substantial cause of Flegles' alleged losses. *See* <u>Movitz v. First National Bank of Chicago</u>, 148 F.3d 760 (7th Cir. 1998) (discussing in the fraud context the distinction between transaction causation, or reliance, and loss causation, or proximate cause). Accordingly, the Court of Appeals correctly ruled that this part of Flegles' claim, like the part concerning TruServ's projections, failed as a matter of law.

## III. Flegles Was Not Entitled To Additional Jury Instructions.

Finally, in addition to its fraud theory, Flegles sought jury instructions on theories of breach of fiduciary duty and negligent misrepresentation. The trial court refused to give the additional instructions out of concern that they

14

would confuse the jury and lead to redundant damages. Flegles contends that the trial court erred and that even if Flegles' fraud theory fails it is entitled to a new trial on these other claims. The Court of Appeals regarded this argument as inadequately preserved. We agree with the courts below that Flegles is not entitled to relief on this ground, for even if preserved the alternative claims fail for the same reasons the fraud claim fails.

First, as noted above, TruServ did not owe a fiduciary duty with respect to the projections, but even if it had breached a fiduciary duty with respect to its own inaccurate financial reports that breach cannot be deemed the cause of Flegles' alleged losses. Like the cause of action for fraud, moreover, a negligent misrepresentation claim requires proof of an actionable misrepresentation, i.e. "false information." Presnell Construction Managers, Inc. v. EH Construction, LLC, 134 S.W.3d 575 (Ky. 2004). Flegles' allegations concerning TruServ's mere opinions and predictions cannot be deemed to meet that requirement.

## **CONCLUSION**

In sum, although we recognize that jury verdicts are not to be disturbed lightly, the allegations in this case are simply that TruServ made sales performance and profitability predictions which failed to materialize. These allegations do not take the case outside the general rule that forward-looking projections or opinions, even if ultimately proven incorrect, do not amount to fraud. A contrary result would mean that anyone, whether an individual or business entity, who undertook to make business projections in Kentucky would proceed at great peril, and might be subject to liability to the recipient

15

even though the projections were not realized solely because of factors beyond the predictor's control. That has not traditionally been Kentucky law, and we decline to move in that direction. Because the Court of Appeals followed existing law and correctly determined that Flegles failed to establish its fraud and other claims as a matter of law, we affirm its ruling.

Minton, C.J.; Cunningham and Noble, JJ., concur. Scott, J., dissents by separate opinion in which Schroder and Venters, JJ., join.

COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Jim L. Flegle
Loewinsohn, Flegle & Deary, LLP
12377 Merit Drive
Suite 900
Dallas, TX 75251

Michael Wayne Hogancamp
P.O. Box 514
Bardwell, KY 42023

COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Jean Winfield Bird
Virginia Hamilton Snell
Wyatt, Tarrant & Combs, LLP
2800 PNC Plaza
500 W. Jefferson Street
Louisville, KY 40202-2898

# Supreme Court of Kentucky

2006-SC-000471-DG
&
2007-SC-000155-DG

FLEGLES, INC.       APPELLANT/CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
V.    NOS 2004-CA-002487-MR & 2005-CA-000162-MR
CARLISLE CIRCUIT COURT NO. 03-CI-00005

TRUSERV CORPORATION     APPELLEE/CROSS-APPELLANT

## DISSENTING OPINION BY JUSTICE SCOTT

I must respectfully dissent from the majority's holding concerning Flegles' fraud claim. In determining that Truserv is entitled to judgment as a matter of law, the majority has usurped the fact-finding function of the jury. I simply cannot agree with the majority's holding that misrepresentations about investment prospects and expected sales performance cannot, as a matter of law, support a fraud claim. In my view, the jury had ample support in the record to conclude that TruServ falsely misrepresented the potential for sales and income from the expanded store. It would seem axiomatic to me that withholding multiple *unfavorable* market projections from a client to whom one owes a fiduciary duty, while instead presenting contrary and misleading

market information, goes to the very heart of a fraud claim. Indeed, it is well-settled that to establish fraud in Kentucky, one must only show

> (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with intention of inducing plaintiff to act, or that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it, and (6) that plaintiff thereby suffered injury.

Sanford Const. Co. v. S & H Contractors, Inc., 443 S.W.2d 227, 231 (Ky. 1969) (quoting Cresent Grocery Co. v. Vick, 194 Ky. 727, 240 S.W. 388 (1922)).

In Kentucky Electric Development Co.'s Receiver v. Head, we noted, "a misrepresentation, to be [actionable], must concern an existing or a past fact, and not a future promise, prophecy, or opinion of a future event, *unless declarant falsely represents his opinion of a future happening.*" 252 Ky. 656, 68 S.W.2d 1, 3 (1934) (emphasis added). This is exactly what Flegles proved TruServ did in this case – falsely misrepresented its opinion as to the potential for sales and income at the expanded store – how else can you characterize *concealed conflicting projections?*

The majority attempts to distinguish Head by citing it for the proposition that Flegles had a "common sense" duty to protect itself. While this general observation may be true, it must not be overlooked that Head acknowledges a duty upon a market participant of the obligation to use *"ordinary vigilance"* in ascertaining the type of

2

information that would be *readily available* to that participant, i.e., in that instance, ascertaining the value of stock. See Head, 68 S.W.2d at 3 (emphasis added). In contrast, here, regardless of Flegles' experience in the industry, or vigilance expended, the type of information that it required in making the business decision was *uniquely in the province and control* of TruServ. No amount of vigilance could have negated TruServ's active misrepresentation of that information.

Flegles pointed to overstated numbers for the Just Ask Rental program and undisclosed adverse projections as evidence that TruServ's opinion was not as it was represented. Thus, a viable case for fraud was presented to the jury as to a misrepresentation of opinion.

In addition to the misrepresentation of opinion, TruServ concealed from Flegles $131 million in business losses. The Court of Appeals, however, determined that Flegles did not establish that it would have refrained from going forward with the expansion had it known about TruServ's loss. The Court of Appeals appears to have imposed on Flegles the burden to establish proximate cause in demonstrating their store loss arose from TruServ's loss. This is improper. Flegles was entitled to show a pattern of concealment to buttress the weight of its evidence of TruServ's intent behind its actions.

In my view, Flegles was not required to show that every grievance that it had against TruServ was a direct cause of the business losses it incurred at the new store, just that it related to an ongoing pattern of concealment. To that end, Flegles presented a comprehensive case

3

revealing numerous facts and statements made by TruServ that were false. Flegles contends that if it had known the totality of the actual facts they would not have gone forward with the expansion. TruServ's losses were merely one of the misrepresentations that Flegles complained about. Certainly, if that were the entire case for Flegles, it would not be sufficient to show causation, however, it was only a facet of the whole case. Thus, Flegles presented a question of fact for the jury to determine: whether TruServ's misrepresentations caused injury.

Although I agree that some of the statements amounted to "mere puffing" or "sales talk," since the jury had an adequate and actionable basis for determining that there was fraud, their verdict should not have been invalidated due to the fact that some of the statements could be properly (and maybe wrongfully) characterized as "mere puffing."

For the foregoing reasons, I must dissent.

Schroder, J., and Venters, J., join this dissenting opinion.

4