RENDERED:  JANUARY 27, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1240-DG


MELISSA WINSTEAD (NOW
BUCHANAN)                                                            APPELLANT


                        ON DISCRETIONARY REVIEW FROM
v.                          WEBSTER CIRCUIT COURT
                   HONORABLE C. RENE' WILLIAMS, JUDGE
                         ACTION NO. 19-XX-00001


ESTATE OF LOLA
SCHWERSINKSKE BY AND
THROUGH EXECUTOR, ELMER
NORMAN WINSTEAD                                                        APPELLEE


                                OPINION
                    VACATING AND REMANDING

                          ** ** ** ** **

BEFORE:  DIXON, EASTON,[1] AND McNEILL, JUDGES.

---

[1] Judge Kelly Mark Easton was substituted for Judge Kelly Thompson who is no longer with the Court of Appeals.

DIXON, JUDGE:  Melissa Winstead (now Buchanan) moved our Court for discretionary review of the orders of the Webster Circuit Court, entered on February 4, 2020, and September 15, 2020, affirming the January 11, 2019, order of the Webster District Court.  This order reopened the Estate of Billy C. Winstead and removed Melissa, his wife, as the estate's personal representative.  After careful review of the briefs, the record, and the law, we vacate and remand.

**FACTS AND PROCEDURAL BACKGROUND**

On March 7, 2013, Billy was severely injured in an automobile accident that left him a quadriplegic.  He was unable to feed, bathe, or toilet himself and relied entirely on Melissa, his wife of 34 years, for his constant care, which she rendered without assistance.  Sadly, Billy passed away from his injuries on August 31, 2014.

Through the assistance of counsel previously retained for the personal injury litigation involving Billy's accident – and presumably to revive that action after Billy passed – Melissa filed a probate action in Webster District Court.  Because Billy died without a will, Melissa applied, with the assistance of counsel, to become the personal representative of his estate.  In her petition, drafted by Billy's counsel, Melissa was listed as Billy's only heir at law.  According to statements made by Melissa's counsel at the district court hearing on this matter, although aware that Billy's mother, Lola, was living at the time of Billy's death, he

-2-

was unaware she was considered one of Billy's "heirs at law" under KRS[2] 391.010 and KRS 391.030, at the time the petition was filed. The only asset of value or interest in Billy's estate was the lawsuit relating to the accident that caused Billy's injuries and ultimate death.

On July 9, 2015, Melissa, again by and through the advice of counsel, filed an informal final settlement in which she was listed as the estate's sole beneficiary. Apparently, counsel was still unaware that Lola was a legal beneficiary of Billy's estate. Accordingly, no written notice was provided to Lola and no waiver was obtained from her. The settlement was approved by the Webster District Court on July 14, 2015.

Over three years later, on August 11, 2018, Lola passed away. On September 25, 2018, another of her sons, Elmer Winstead, became the executor of her estate. Shortly thereafter, Elmer[3] moved the Webster District Court to reopen Billy's estate and remove Melissa as its personal representative. The motion alleged that Melissa committed "perjury, fraud, and misled" the Webster District Court by filing a petition asserting she was Billy's sole legal heir. A hearing was held on October 30, 2018, but no evidence of fraud was presented at that time. In

---

[2] Kentucky Revised Statutes.

[3] Because the case herein involves two estates, for sake of clarity and to prevent confusion, we refer to actions taken by Elmer, acting in his official capacity as the executor of Lola's estate, simply as "Elmer."

fact, no evidence at all was presented, either by sworn testimony or affidavit, from any witness or party to the estate action. Even so, the Webster District Court granted Elmer's motion, reopening Billy's estate and removing Melissa as its personal representative.

On February 7, 2019, Melissa appealed the Webster District Court's order reopening Billy's estate and removing her as its personal representative to the Webster Circuit Court. After the matter was briefed, the court affirmed the district court's order. Melissa then moved the court to alter, amend, or vacate its order, which was eventually denied on September 15, 2020. We then granted Melissa's motion for discretionary review of these orders.

## STANDARD OF REVIEW

Whether a CR[4] 60.02 motion to set aside a judgment should be granted is left to the sound discretion of the trial court. Because the law favors finality, relief should only be granted "with extreme caution and only under the most unusual and compelling circumstances." *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011). We, therefore, review for whether the trial court abused its discretion. *Id*. "The test for abuse of discretion is whether the trial [court's] decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

---

[4] Kentucky Rules of Civil Procedure.

# LEGAL ANALYSIS

On appeal, Melissa contends the Webster District and Circuit Courts abused their discretion in granting, and then affirming, Elmer's CR 60.02 motion. CR 60.02 specifically provides "[t]he motion **shall be made within a reasonable time**, and on grounds (a), (b), and (c) **not more than one year after the judgment, order**, or proceeding was entered or taken." (Emphasis added.) The grounds to be brought within one year are: "(a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by **due diligence** could not have been discovered in time to move for a new trial under Rule 59.02; [and/or] (c) **perjury or falsified evidence**[.]" *Id.* (emphasis added). The grounds for which such motion must be made within a reasonable time are: "(d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief." Our Supreme Court, albeit in the context of a criminal case, has noted:

> CR 60.02 was enacted as a substitute for the common law writ of coram nobis. The purpose of such a writ was to bring before the court that pronounced judgment errors in matter of fact which (1) had not been put into issue or passed on, (2) **were unknown and could not have been**

> **known to the party by the exercise of reasonable
> diligence and in time to have been otherwise
> presented to the court**, or (3) which the party was
> prevented from so presenting by duress, fear, or other
> sufficient cause. *Black's Law Dictionary, Fifth
> Edition*, 487, 1444.
>
> In *Harris v. Commonwealth*, Ky., 296 S.W.2d 700
> (1956), this court held that 60.02 does not extend the
> scope of the remedy of coram nobis nor add additional
> grounds of relief. We held that coram nobis "is an
> extraordinary and residual remedy to correct or vacate a
> judgment upon facts or grounds, not appearing on the
> face of the record and not available by appeal or
> otherwise, which were not discovered until after
> rendition of judgment without fault of the party seeking
> relief."

*Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983) (emphasis added).

Elmer summarily raised three interrelated claims in his CR 60.02

motion: (1) Melissa had committed perjury; (2) Melissa had defrauded the court;

and/or (3) Melissa had misled the district court, presumably all in a plan to cut

Lola out of any proceeds of Billy's personal injury lawsuit. The Webster District

Court approved the final informal settlement on July 14, 2015; however, Elmer's

motion to set that judgment aside was not made until *over three years later*, and

only after Lola's death on October 30, 2018. We note that the clock measuring the

time limitations established by CR 60.02 started ticking from the date Billy's estate

was settled, not from Lola's death, as the Webster Circuit Court and Appellee now

contend. Thus, relief was clearly unavailable on grounds listed in CR 60.02(a),

-6-

(b), and/or (c). Thus, Elmer's perjury claim is barred by the one-year limitation provided for in the Rule.

Nevertheless, Elmer argues his claim, based on fraud and misleading the court, should be considered under subsection (d) or the catchall provision, subsection (f), as these are specifically excluded from the one-year proviso. Pursuant to these provisions, a movant "must affirmatively allege facts which, if true, justify vacating the judgment and further [under (f)] allege special circumstances that justify CR 60.02 relief." *Gross*, 648 S.W.2d at 856. Only allegations not included within (a), (b), or (c) may be grounds for application of CR 60.02(d). Relief under CR 60.02(f) is only available if the asserted grounds for relief are not recognized under subsections (a)-(e) of the rule. *See Alliant Hosp., Inc. v. Benham*, 105 S.W.3d 473, 478 (Ky. App. 2003).

The obvious dilemma in Elmer's argument is that subsection (d), by its own description, limits its application to a type of fraud that affects the proceedings *other than by perjury or falsified evidence*. The heart of Elmer's claim is that Melissa perjured herself and falsified the information on the petition requesting her appointment as personal representative of her husband's estate.

Fraud affecting court proceedings has a rather complicated past. Two separate types of fraud could be alleged: extrinsic or intrinsic. Extrinsic fraud involves fraud collateral to the issues presented in a particular case.

> According to the leading authority on the Kentucky
> Rules of Civil Procedure, fraud affecting the proceedings
> relates to what is denominated "extrinsic fraud." 7 Kurt
> A. Philipps, Jr., *Kentucky Practice*, CR 60.02, cmt. 6 (5th
> ed.1995). "This covers fraudulent conduct outside of the
> trial which is practiced upon the court, or upon the
> defeated party, in such a manner that he is prevented
> from appearing or presenting fully and fairly his side of
> the case." *Id.* "Normally, perjury by a witness or
> nondisclosure of discovery material is not the type of
> fraud to outweigh the preference for finality." *Id.*

*Rasnick v. Rasnick*, 982 S.W.2d 218, 219 (Ky. App. 1998). As an example, in

*Burke v. Sexton*, 814 S.W.2d 290, 291-92 (Ky. App. 1991), this Court determined

extrinsic fraud occurred where a husband, who had convinced his wife to sign an

agreement essentially awarding him all of the marital property and waiving her

right to notice of further court proceedings, intentionally misled her to believe he

had abandoned his dissolution petition when, in fact, he proceeded with the divorce

action. Extrinsic fraud has been determined to include "only the most egregious

conduct," such as bribing a jury or jury member, evidence fabrication, and

improper attempts by counsel to influence the court. *Rasnick*, 982 S.W.2d at 220.

Intrinsic fraud, on the other hand, is fraud pertaining to issues before the court,

such as perjury or the filing or introduction of perjured documents. Relief for

intrinsic fraud under CR 60.02 is limited to one-year. *Id.*

Until the Supreme Court's decision in *Terwilliger v. Terwilliger*, 64

S.W.3d 816, 819 (Ky. 2002), the two types of fraud were treated differently.

-8-

However, the Court in *Terwilliger* extended the reach of fraud affecting the proceedings under CR 60.02(d) to include fraud on a party. The net result permitted extension of the time restriction for filing to the "within a reasonable time" requirement. However, this Court, in *Carroll v. Carroll*, 569 S.W.3d 415, 418 (Ky. App. 2019), noted, "[a]lthough *Terwilliger* abolished the distinction between intrinsic and extrinsic fraud, it did not abolish the distinction between perjury and falsified evidence in the courtroom and 'fraud affecting the proceedings, *other than perjury or falsified evidence*.' *Id.* (emphasis added); CR 60.02(d)." In other words, the falsified petition in *Carroll* continued to fall within the purview of CR 60.02(c), by its own terms and, therefore, remained subject to the one-year time constraint even though such constituted a clear fraud on the court. Thus, any argument of perjury or falsified evidence affecting a court proceeding must be brought within one year of the judgment or it is time-barred.

The argument that Elmer's allegations constitute "fraud affecting the proceedings, **other than perjury or falsified evidence**" has never been alleged, much less proven. In Elmer's motion to reopen Billy's estate, he states:

> As grounds for this Motion, the Movant asserts that the decedent Billy C. Winstead died on August 31, 2014 intestate leaving as his heirs at law his mother, Lola Schwersinkske and his wife Melissa Winstead. Thereafter, Melissa Winstead committed perjury, fraud, and mislead [sic] this Court by filing a Petition herein asserting that she was the sole heir of Billy C. Winstead and executed an Informal Final Settlement which stated

> that all the beneficiaries of the decedent had received their respective share of the estate. Melissa Winstead failed to provide any sums to Lola Schwersinkske.

Thus, Elmer's contention is that Melissa perjured herself by signing estate pleadings that were false and, in so doing, misled the district court. However, as previously noted, in order to prevail under CR 60.02(d), Elmer must allege and prove fraud *other than perjury or falsified evidence*. Clearly, he has not done so. Accordingly, the CR 60.02 motion was filed more than two years too late.

Nevertheless, assuming, *arguendo*, that Elmer's motion was properly made pursuant to CR 60.02(d) for fraud affecting the proceedings, other than by perjury or falsified evidence, such fraud must be properly and specifically pled and proven. "A party alleging fraud under CR 60.02(d) has the burden of proving, **by clear and convincing evidence**, that the opposing party's procurement of the court's prior order was achieved by fraud or deceit." *Ipock v. Ipock*, 403 S.W.3d 580, 585 (Ky. App. 2013) (emphasis added).

An essential element that defines "fraud" is that a false statement is made to induce another to act to his or her detriment. The Merriam-Webster Dictionary defines "fraud" as: "intentional perversion of truth in order to induce another to part with something of value or to surrender a legal right." *Fraud*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/fraud (last accessed Jan. 24, 2023). Black's Law

-10-

Dictionary defines "fraud" as: "A knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." *Fraud*, BLACK'S LAW DICTIONARY (11th ed. 2019). Further, our Supreme Court has declared:

> in Kentucky such a claim requires proof, ***by clear and convincing evidence***, of the following six elements: (1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff. [*United Parcel Serv. Co. v. Rickert*,] 996 S.W.2d 464 (Ky. 1999).

*Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (emphasis added).

Herein, while we are unconvinced Elmer's fraud claim was even properly pled, we are certain it was not sufficiently proven. Absolutely ***no*** evidence was presented that either Melissa or her counsel knew the statement concerning Billy's legal heirs was false. In fact, at the hearing before the district court, Melissa's counsel asserted that it was his *mistake* – due to his ignorance of Kentucky's law of intestacy – that led to the omission of Lola as a listed heir at law on the petition and informal settlement, and that Melissa had relied upon his legal expertise in signing the documents he prepared and presented. Generally, mistake negates fraud. Stated another way, mistake and fraud are nearly always mutually exclusive. For our purposes, mistake falls under CR 60.02(a) and its one-year

-11-

statute of limitations, while fraud pursuant to CR 60.02(d), as previously noted, must be brought within a reasonable amount of time – which may be greater or less than one year depending upon the totality of the circumstances. Even so, ***no evidence*** has been presented on this, or any other issue, only the arguments of counsel. This does not meet the required burden for proving fraud or justifying relief under CR 60.02(d).[5]

While it is doubtful that Melissa stated she was Billy's only legal heir knowing it was false – or under the lesser burden of making such statements recklessly – given the fact that she relied on the advice of her attorney, such is speculation since no evidence was presented. However, we would observe it is Elmer's burden to properly allege and prove any claim of fraud, not Melissa's to disprove. The only "evidence" in the record consists of Melissa's petition and informal settlement that she is the only heir. Elmer's unverified pleadings do not constitute proof.

Moreover, not only must Elmer meet his burden of proving fraud, he must also explain how his motion, brought three years after Billy's estate was closed, was brought within a reasonable time. Again, this is something for which absolutely no proof was offered – nor even an argument made – as to how his

---

[5] The Webster Circuit Court asserts the pleadings themselves serve as evidence. However, they do not serve as proof as to Melissa's knowledge of Billy's legal heirs or intent to deceive either the court or Lola as required to prove fraud.

-12-

motion under CR 60.02(d) was brought within a reasonable time. Without such evidence the Webster District Court was without a basis for setting aside its earlier settlement of Billy's estate, and so doing constituted clear error.

Billy was Lola's son, and it is utterly unthinkable – absent compelling circumstances, which have neither been alleged nor demonstrated herein – that a mother would be unaware of the severe injury and subsequent death of her son and the opening and closing of his estate before her own death more than three years later.[6] Certainly, Lola should have been aware of the possibility that Melissa would file proceedings concerning Billy's estate. There is no evidence why Lola never sought any interest in Billy's estate. There has been no allegation that Melissa hid Billy's death or in any way sought to hide knowledge of the personal injury suit or estate documents. Such undercuts any proposed argument of Elmer that his allegations "were unknown and could not have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court[.]" *Gross*, 648 S.W.2d at 856. Nor is there an argument from equity. What court would hold it inequitable for a wife of more than 30 years, who cared for her invalid husband's every need after his injury and before his untimely death, to prevail over a brother, acting merely as a fiduciary for Lola's estate, who in no

---

[6] At the hearing to reopen this matter before the Webster District Court, Melissa's counsel acknowledged that he spoke to Lola about Billy's lawsuit at his funeral. Counsel argued that Lola knew of both Billy's death and the opening of his estate.

way cared for his sibling prior to his death? It was only after Lola's death that Elmer was provided an opportunity to get his hands on Billy's personal injury lawsuit settlement, and he did so within six weeks of his mother's passing. While she was alive, he had no claim to those funds but wasted no time seeking to do so after Lola's death.

## CONCLUSION

As no basis exists to support the Webster District Court's order reopening Billy Winstead's estate, its order so doing is VACATED, and the matter is REMANDED to the district court to reinstate its prior order of settlement.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Stephen M. Arnett
Morganfield, Kentucky

BRIEF FOR APPELLEE:

Wm. Clint Prow
Providence, Kentucky

-14-